(No. 106198.—

**ACME MARKETS, INC.,** *et al.,* **Appellants, v. KAREN CALLANAN, County Treasurer and** *ex-officio* **County Collector of Will County, Illinois, Appellee.**

*Opinion filed October 29, 2009.—Rehearing denied*
*January 25, 2010.*

James A. Rooney and Paula L. Bilton, of Rooney & Bilton, LLC, of Chicago, for appellants.

James W. Glasgow, State's Attorney, and Domenica A. Osterberger, Assistant State's Attorney, of Joliet, for appellee.

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion.

## OPINION

Plaintiff Acme Markets, Inc., and other taxpayers (hereafter taxpayers), brought this tax objection proceeding pursuant to section 23—5 *et seq.* of the Property Tax Code (35 ILCS 200/23—5 *et seq.* (West 2000)) to obtain a refund of certain taxes they had paid to Karen Callanan, county treasurer and *ex officio* county collector of Will County (hereafter County) for the tax year 2001. The taxes in question had been levied by the County pursuant to section 5 of the County Shelter Care and Detention Home Act (hereafter Detention Home Act) (55 ILCS 75/5 (West 2000)) for purposes of operating the County's detention home. The basis for the taxpayers' objection was that authorization for levy and collection of the tax had never been submitted to a direct referendum of the County voters as required by section 18—190 of the Property Tax Extension Limitation Law (hereafter PTELL) (35 ILCS 200/18—190 (West 2000)).

The circuit court rejected the taxpayers' claim, holding that the detention home levy for the tax year 2001

was not subject to the requirements of section 18—190 of PTELL. The circuit court further concluded that any objections the taxpayers may have had to levies for the detention home should have been raised in 1997, when they were first imposed, and could no longer be asserted. The court therefore denied any relief to the taxpayers and later denied taxpayers' motion for rehearing.

The appellate court affirmed with one justice specially concurring and one justice dissenting. 378 Ill. App. 3d 676. We granted the taxpayers' petition for leave to appeal. 210 Ill. 2d R. 315. For the reasons that follow, we reverse the judgments of the appellate and circuit courts and remand the cause to the circuit court for further proceedings consistent with this opinion.

## BACKGROUND

Section 5 of the Detention Home Act (55 ILCS 75/5 (West 2000)), pursuant to which the taxes at issue here were levied, provides, in pertinent part, that

> "in counties with over 300,000 but less than 1,000,000 inhabitants that establish a shelter care or detention home by majority vote of their county boards, taxes for construction and maintenance of the home may be extended without adoption of this Act by the legal voters of the counties and without a referendum. They may levy and collect a tax not exceeding .04% of the value, as equalized or assessed by the Department of Revenue, upon all property within the county, for the purpose of constructing a home, and a tax of .02% for operation of the home."

While the foregoing statute does not require taxes for county homes to be approved by means of a referendum, section 18—190 of PTELL, which serves as the basis for the taxpayers' challenge, provides, in relevant part:

> "If a new rate or a rate increase is authorized by statute to be imposed without referendum or is subject to a backdoor referendum, as defined in Section 28—2 of the Election Code [10 ILCS 5/28—2 (West 2000)], the governing body of the affected taxing district before levying the new

rate or rate increase shall submit the new rate or rate increase to direct referendum under the provisions of Article 28 of the Election Code [10 ILCS 5/28—1 *et seq.* (West 2000)]." 35 ILCS 200/18—190 (West 2000).

In the case before us, the County, which has a population of over 300,000 but less than 1 million inhabitants, first decided to levy a tax for detention home operations pursuant to section 5 of the Detention Home Act (55 ILCS 75/5 (West 2000)) for the 1997 tax year. Under section 5, counties are authorized to levy and collect taxes for detention home operations on an annual basis, and the County's board voted to levy the tax every year from 1997 to 2001. At no time, however, was the levy ever submitted to the voters of the County for approval pursuant to section 18—190 of PTELL.

The taxpayers in this case filed objections to the tax when it was first levied for the 1997 tax year and in each of the four years which followed. The objections for the first four years were settled by the parties. No settlement was reached for the fifth tax year, 2001. That year, the sum of $945,023 was levied by the county board for the detention home operations, which produced a rate of $0.0091 per $100 of equalized assessed value and resulted in a tax liability to plaintiffs of $73,649.12. Through these proceedings, the taxpayers sought a refund of that sum, which was paid under protest.

The issues posed by the taxpayers' protest are (1) whether the requirement in section 18—190 of PTELL that a new rate must be approved by direct referendum applies only to rates that are statutorily created after section 18—190 took effect on January 1, 1994; and (2) if not, whether the 2001 detention home levy is invalid and is therefore subject to objection, where the levy has never been submitted to a direct referendum pursuant to section 18—190 of PTELL.

The appellate court's approach to the appeal was splintered, with each member of the three-judge panel is-

suing a separate opinion. In what was deemed the "majority" or "lead" opinion, Justice Carter took the view that section 18—190 of PTELL applied to "only those new taxes newly authorized by statutes enacted after the effective date of section 18—190, which was January 1, 1994." 378 Ill. App. 3d at 682. Because the statute authorizing the levies for the detention home tax was enacted prior to January 1, 1994, and therefore predated section 18—190, Justice Carter reasoned that the challenged levy was not subject to section 18—190 and that the County was therefore not required to hold a referendum prior to imposing it. 378 Ill. App. 3d at 682-83. In light of that conclusion, Justice Carter had no need to consider whether the failure to hold a direct referendum on the levy would have rendered it invalid if section 18—190 had been applicable.

In a specially concurring opinion, Justice Schmidt disagreed with Justice Carter's analysis. Contrary to Justice Carter, but in accordance with a dissent written by Justice McDade, the third member of the panel, Justice Schmidt took the view that for purposes of section 18—190, a new rate is any rate for a fund for which the taxing district has never levied in the past. Accordingly, Justice Schmidt believed that a referendum pursuant to section 18—190 of PTELL should have been conducted when the detention home levy was first imposed in 1997. In his view, however, once the initial levy was imposed, the tax was no longer a "new rate" within the meaning of section 18—190 and the levies imposed in successive years were not subject to that statute's referendum requirement. He further held that statutory defects that pertained solely to the initial 1997 levy could not be asserted in an objection four tax years later. The basis for taxpayers' challenge thus having been lost, Justice Schmidt agreed with Justice Carter's conclusion that the circuit court properly rejected the taxpay-

ers' claim for relief. 378 Ill. App. 3d at 683 (Schmidt, J., specially concurring).

Justice McDade's dissent expressly rejected Justice Carter's view that the reach of section 18—190 was limited to legislation enacted after section 18—190 took effect. In her view, the statute was remedial in nature and also applied to levies imposed under authorization of statutes predating section 18—190. Looking to the language of the statute and citing as support the interpretation of the law followed by the Department of Revenue, she reasoned that a levy constitutes a "new rate" within the meaning of section 18—190 when it is actually imposed for the first time, regardless of when it may have first been authorized by statute. 378 Ill. App. 3d at 685 (McDade, P.J., dissenting). Having reached this conclusion, however, she did not go on to address whether the taxpayers could invoke the failure to comply with section 18—190's referendum requirement as a predicate for their objection to the 2001 levy.

## ANALYSIS

The issues in this case are based on statutory interpretation. The construction of statutes presents a question of law which we review *de novo*. *People v. Bonutti*, 212 Ill. 2d 182, 188-89 (2004).

In support of his conclusion that the requirement in section 18—190 that new rates be approved by direct referendum is applicable only to rates statutorily created after January 1, 1994, Justice Carter cited *In re Application of the Du Page County Collector for the Year 1993*, 288 Ill. App. 3d 480 (1997) (hereafter *1212 Associates*). That case involved a public library levy for building and equipment purposes which was authorized by statute at a rate not to exceed 0.02% per $100 of assessed valuation, and was subject to a back door referendum. *1212 Associates*, 288 Ill. App. 3d at 482. The objectors argued that the tax levy violated the tax cap act (35 ILCS 200/

18—190(a) (West 1994)), a prior version of section 18—190 of PTELL which operated in the same manner, because it had not been approved by direct referendum. *1212 Associates*, 288 Ill. App. 3d at 481. The circuit court held that a referendum was required before the levy could be extended, but the appellate court reversed. In so doing, the appellate court stated:

"After reviewing the terms 'new rate' and 'rate increase' in context with the entire provision, we determine that the terms do not apply to the 1993 Glenside Public Library District building and maintenance rate. When read in context, the terms are clear and unambiguous. The terms 'new rate' and 'rate increase' are followed by the phrase 'authorized by statute.' Thus, section 18—190(a) of the Tax Cap Act applies only to rates that have been newly authorized by statute or rate limits that have been increased by statute. Since 1978 public library districts have been authorized to levy a building and maintenance tax at a rate of 0.02%. [Citation.] Because the tax was authorized before 1993, the 1993 Glenside Public Library District building and maintenance tax is not a 'new rate.' *** Thus, section 18—190(a) does not apply and a direct referendum was not required." *1212 Associates*, 288 Ill. App. 3d at 483.

The lead opinion in this case acknowledged that *"1212 Associates* was later called into question by a subsequent decision from the Second District also written by [the same justice], *Allegis Realty Investors v. Novak*, 356 Ill. App. 3d 887, 827 N.E.2d 485 (2005)[, *rev'd on other grounds*, 223 Ill. 2d 318 (2006)]." 378 Ill. App. 3d at 679. After discussing *Allegis Realty* at length, the lead opinion wrote that it "must determine whether the interpretation in *1212 Associates* was correct or if, as the *dicta* in *Allegis Realty* suggests, *1212 Associates* was wrongly decided." 378 Ill. App. 3d at 681. The opinion ultimately concluded that "[i]n examining the construction of section 18—190, we find that it meant to subject only taxes newly authorized by statute to the popular

referendum requirement. We concur with the analysis conducted by the court in *1212 Associates*." 378 Ill. App. 3d at 682. Consistent with that view, the lead opinion held that " 'new rate' under the statute means only those new taxes newly authorized by statutes enacted after the effective date of section 18—190, which was January 1, 1994 [citation]. Therefore, as the 'Detention Home—Operations' levy was authorized by statute as far back as 1907 and updated as recently as 1967, no referendum was required before it could be imposed. 55 ILCS Ann. 75/5, Historical & Statutory Notes, at 404 (Smith-Hurd 2006)." 378 Ill. App. 3d at 682-83.

The lead opinion's conclusion was contrary to the way in which the Department of Revenue defined what constituted a new rate under section 18—190 of PTELL. Under standards adopted by the Department,

"[w]hen a levy for a specific fund is made for the first time, this is a new rate under Section 18—190 without regard to whether it is a new statutory authorization." Technical Manual, Illinois Department of Revenue, 86 Ill. Adm. Code §110.190.

In rejecting this definition, Justice Carter's lead opinion adopted the position that "[the Department's] regulations are persuasive but not binding and this court does not have to follow those regulations if it finds them in conflict with the plain meaning of the statute, as those rules can neither limit nor extend the scope of the statute." 378 Ill. App. 3d at 682.

In undertaking our review of the lower courts' judgments, we first address the issue of whether the requirement of section 18—190 of PTELL that a new rate is subject to approval by direct referendum applies only to rates that are statutorily created after January 1, 1994. The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. *People v. Pack*, 224 Ill. 2d 144, 147 (2007). The legislative intent of a statute is best determined from the plain and ordinary

meaning of the language used in the statute. *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 55 (2002). When the language used in a statute is plain and unambiguous, we may not depart from its terms by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent (*Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 226 Ill. 2d 559, 567 (2007)), nor may we add provisions that are not found in a statute (*People v. Lewis*, 223 Ill. 2d 393, 402 (2006)).

We agree with the lead appellate court opinion in this case that the provisions of section 18—190 of PTELL at issue here are unambiguous. In our view, however, the statute's terms must be given a different construction than the one ascribed to them by that opinion.

The critical statutory language employed in section 18—190 of PTELL and in the predecessor provision interpreted in *1212 Associates* is straightforward. It states that "[i]f a new rate or a rate increase is authorized by statute to be imposed without referendum or is subject to a backdoor referendum, *** the governing body of the affected taxing district before levying the new rate or rate increase shall submit the new rate or rate increase to direct referendum ***." 35 ILCS 200/18—190 (West 2000). The court in *1212 Associates* stated that it reviewed the terms "new rate" and "rate increase" in context with the entire provision; that the terms "new rate" and "rate increase" are followed by the phrase "authorized by statute"; and therefore, the statute applies only to rates which have been newly authorized by statute. *1212 Associates*, 288 Ill. App. 3d at 483. In our view, however, this analysis is flawed.

Although the *1212 Associates* court purported to review the operative terms in context with the entire provision, it appears that it reviewed the terms only in context with the first 12 words of the provision. To be sure, the terms "new rate" and "rate increase" are fol-

lowed by the phrase "authorized by statute." What the court failed to appreciate, however, is that to say that something is "authorized by statute" is not the same as saying it is "authorized by a *new* statute." If the legislature intended the referendum required under section 18—190 of PTELL to be so limited, it could have stated "is authorized by a *new* statute" or "is authorized by a statute enacted after the effective date of this section." It did not do so.

Contrary to both Justice Carter and the view taken by the appellate court in *1212 Associates*, we read the plain language of 18—190 of PTELL to mean that a taxing district levying a new rate must submit the proposed new rate to a direct referendum regardless of whether the statute authorizing the rate was adopted before or after January 1, 1994, when PTELL took effect. Accordingly, we reject the holding of the circuit court and the lead opinion of the appellate court that a "new rate" under section 18—190 means only those taxes newly authorized by statutes enacted after PTELL's effective date. In so far as *In re Application of the Du Page County Collector for the Year 1993*, 288 Ill. App. 3d 480 (1997) (*1212 Associates*), held otherwise, it is overruled.

We further note that to the extent that any ambiguity exists in the statute, established principles of statutory interpretation counsel that we afford substantial weight and deference to the interpretation given to the law by the administrative agency charged with its enforcement. *Reed v. Kusper*, 154 Ill. 2d 77, 86 (1992). The interpretation we follow today is consistent with the definition of a new rate under section 18—190 as promulgated by the Department of Revenue in its Technical Manual, Illinois Department of Revenue, 86 Ill. Adm. Code §110.190. As we have indicated, the Department's regulation states that "[w]hen a levy for a specific fund is made for the first time, this is a new rate under sec-

tion 18—190 without regard to whether it is a new statutory authorization." Technical Manual, Illinois Department of Revenue, 86 Ill. Adm. Code §110.190. Moreover, as Justice McDade noted in her dissent, this construction is also consistent with the purpose of providing citizens greater control over the taxes they pay by requiring new tax levies or increases to be submitted to direct referendum. See 378 Ill. App. 3d at 684-85 (McDade, P.J., dissenting).

Having concluded that whether a rate is "new" and therefore subject to a referendum under section 18—190 is determined by the time of the levy rather than by when the rate was authorized by statute, we turn to the second issue presented by this case, namely, whether the 2001 detention home levy challenged here is invalid and therefore subject to objection because levies for the detention home have never been submitted to a direct referendum pursuant to section 18—190's provisions.[1]

The taxpayers argue that we must answer this question in the affirmative. In their view, the levy is invalid because it has never been submitted to a direct referendum pursuant to section 18—190. We agree. A similar situation was presented to our court in *People ex rel. Nordstrom v. Chicago & North Western Ry. Co.*, 11 Ill. 2d 99 (1957). In that case we held that a county tax levy authorized by section 22 of "An Act relating to the care

---

[1]We note, parenthetically, that the standards sets forth by the Department of Revenue in 86 Ill. Adm. Code §110.190 are not helpful in resolving this issue. That regulation was intended to clarify which levies are subject to section 18—190 of PTELL by specifying that whether the levy is a "new rate or rate increase" within the meaning of PTELL is determined by when the tax was first levied, not by when the statute authorizing the rate was adopted. The second issue before us turns on the separate question of when, exactly, a levy qualifies as having been made for the first time. On this the regulation offers no more guidance than section 18—190 itself.

and treatment by counties of persons afflicted with tuberculosis and providing the means therefor" (Ill. Rev. Stat. 1951, ch. 34, par. 175i1) was illegal because it was in excess of the maximum rate for general county purposes fixed by section 25.05 of the Counties Code (Ill. Rev. Stat. 1951, ch. 34, par. 25.05) and had not been submitted to a referendum as provided by section 27 of the Counties Code (Ill. Rev. Stat. 1951, ch. 34, par. 27). In reaching that conclusion we held that "[t]he sole authority and jurisdiction of a county to levy a tax in excess of the rate for general corporate purposes emanates from a valid election held under the provisions of section 27." *People ex rel. Nordstrom,* 11 Ill. 2d at 104. In like manner, the sole authority for a county to levy a "new rate" or tax pursuant to section 18—190 of PTELL is for "the governing body of the affected taxing district before levying the new rate or rate increase [to] submit the new rate or rate increase to direct referendum." 35 ILCS 200/18—190 (West 2000). Under the rationale of *Nordstrom* and cases cited therein, the detention home levy for 1997 was therefore an illegal levy because it was not submitted to a direct referendum as required by section 18—190 of PTELL.

Although the initial 1997 detention home levy was illegal, that year's levy is not at issue here. As discussed previously, the objection in this case is limited to the levy imposed in 2001. We must therefore still consider whether the taxpayers have a basis for challenging that levy.

As set forth earlier in this disposition, Justice Schmidt's special concurrence asserted that the failure to submit the levy to voter approval was a defect that could only have been raised in 1997, when the levy was first made. Because the levy had been imposed previously, Justice Schmidt reasoned that by 2001 it could no longer qualify as "a new rate or a rate increase" within the

meaning of section 18—190; that because only "a new rate or a rate increase" is subject to section 18—190's requirement for voter approval, voter approval was not required for the 2001 levy; and that because voter approval was no longer necessary by 2001, the taxpayers had lost their basis for challenging that year's levy. 378 Ill. App. 3d at 683 (Schmidt, J., specially concurring).

As a preliminary matter, Justice Schmidt correctly recognized that the taxpayers' right to challenge the 2001 levy was not constrained by principles of estoppel. The taxpayers objected to the levy for the detention home when it was initially imposed in 1997, although they settled their objections without the need for obtaining a court judgment, and in any case, "[t]he tax for each year is a separate tax, and there is no element of estoppel in the payment of a tax for one year which would preclude [a taxpayer] from objecting to a similar tax the following year." *People ex rel. Tarman v. Cincinnati, Indianapolis & Western Ry. Co.*, 261 Ill. 582, 587 (1914).

Where we part company with Justice Schmidt is in his conclusion that the 2001 levy was no longer subject to challenge for failure to meet section 18—190's referendum requirement because, after 1997, it could no longer be considered a "new rate" within the meaning of section 18—190. While it is true that the 2001 detention home tax levy was preceded by similar levies in 1997, 1998, 1999, and 2000, the existence of the earlier levies does not insulate the 2001 levy from attack based on section 18—190.

Justice McDade's dissent correctly recognized that the purpose of PTELL "is to provide greater citizen control over the levy of taxes they are required to pay." 378 Ill. App. 3d at 684 (McDade, P.J., dissenting). Under section 18—190 of that statute, a referendum was clearly required before a tax levy to support the detention home could be imposed. No such referendum was conducted

prior to the 1997 levy or at any other time. To date, the protections contemplated by the legislature when it enacted PTELL have been ignored.

Where, as here, the requirements of a statute are designed for the protection of taxpayers, those provisions are mandatory and a disregard of them will render the tax illegal. *Chicago & Northwestern Ry. Co. v. People ex rel. McGough*, 193 Ill. 594, 598 (1901). The tax will be vitiated absent manifestation of a contrary legislative intent. *People v. Jennings*, 3 Ill. 2d 125, 128 (1954), cited in *Andrews v. Foxworthy*, 71 Ill. 2d 13, 19-20 (1978). No such contrary legislative intent is evident here. As a result, each of the detention home tax levies imposed by the County was fatally infirm. Correspondingly, each remained subject to challenge by any taxpayers who filed timely objections in accordance with the provisions of section 23—5 *et seq.* of the Property Tax Code (35 ILCS 200/23—5 *et seq.* (West 2000)).[2]

The view taken by Justice Schmidt in his concurring opinion fails to account for the foregoing legal principles. As a result, while it purports to honor the language of section 18—190 of PTELL, it actually reaches a result which is contrary to the statute. As we have indicated, the law, where it applies, mandates a referendum whenever the governing body of a taxing district seeks to levy a new rate or rate increase. 35 ILCS 200/18—190 (West 2000). Because a referendum has yet to be held

---

[2]Taxpayers who pay a tax voluntarily normally may not recover that payment even if the taxing body assessed or imposed the taxes illegally. Voluntary tax payments can only be recovered if such recovery is authorized by statute. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 25 (2004). Accordingly, taxpayers who paid the detention home tax in prior years but failed to follow the steps required by this statute to object to the tax levy are now precluded from obtaining a refund. See, *e.g., Bass v. South Cook County Mosquito Abatement District*, 236 Ill. App. 3d 466 (1992) (and cases collected therein).

with respect to the detention home levy, none of the purported levies is valid. Without a valid preexisting levy, each successive levy is, in effect, an attempt to impose the levy for the first time. As such, it is tantamount to a new rate or rate increase within the meaning of section 18—190 (see 86 Ill. Adm. Code §110.190) and is subject to the referendum requirement imposed by that statute. As a result, the 2001 levy was as vulnerable to challenge under section 18—190 as the levy for 1997.

The County has not cited nor have we found any authority that would excuse failure to comply with a mandatory provision of a tax statute because the year in which the levy was first imposed has now passed. This is not surprising, for such a rule would yield absurd results. It would mean, for example, that even if a taxpayer objected successfully in the first year a levy is made without prior approval by the required referendum, the same taxpayer could not object in subsequent years if the tax continued to be levied, because it would not qualify as a "new tax" in any subsequent year. This cannot be what the legislature intended by the enactment of section 18—190.

Finally, there is no merit to Justice Schmidt's suggestion that the taxpayers' decision to settle their objections to the 1997 through 2000 tax levies bears adversely on their right to renew their objections with regard to the 2001 levy. Rather than showing a lack of sincerity in the taxpayers' actions, such conduct is completely appropriate under Illinois law. We repeat again the point we made in *People ex rel. Tarman v. Cincinnati, Indianapolis & Western Ry. Co.*, 261 Ill. at 587, a case cited by Justice Schmidt himself, that "[t]he tax for each year is a separate tax, and there is no element of estoppel in the payment of a tax for one year which would preclude [a taxpayer] from objecting to a similar tax the following year."

## CONCLUSION

For the foregoing reasons, the taxpayers' objections should have been sustained, and they should have been awarded a refund of the taxes they challenged. The judgments of the circuit and appellate courts are therefore reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

*Judgments reversed;*
*cause remanded.*