# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Application of Skidmore*, 2011 IL App (2d) 100730

---

| | |
|---|---|
| Appellate Court Caption | *In re* APPLICATION OF ROBERT SKIDMORE, as County Treasurer, for Judgment Fixing the Correct Amount of Any Tax Paid Under Protest for the Year 2007 and Prior Years (The City of Waukegan, Plaintiff-Appellant, v. Robert Skidmore, Lake County Treasurer, Defendant-Appellee). |
| District & No. | Second District<br>Docket No. 2–10–0730 |
| Filed | June 10, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute as to whether a city was obligated to pay the real estate taxes on abandoned and contaminated land it acquired by way of trustee's deeds executed by the trustee in bankruptcy for the owner, the trial court erred in entering summary judgment for the county treasurer, and on appeal, the appellate court reversed the entry of summary judgment for the treasurer and entered summary judgment for the city based on the conclusion that section 21–95 of the Property Tax Code permitted the abatement of the property taxes on the property, since trustee's deeds authorized by the bankruptcy court conveying the property to the city fell within the scope of the term "judicial deed" as used in section 21–95 of the Code and that section operated to abate the taxes. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 08–TX–8; the Hon. Raymond J. McKoski, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed; judgment entered. |
| Counsel on Appeal | Robert J. Masini and Gretchen A. Neddenriep, both of Diver, Grach, Quade & Masini, LLP, of Waukegan, for appellant. |
| | Michael J. Waller, State's Attorney, of Waukegan (Tara H. Ori, Assistant State's Attorney, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion. |
| | Justices Hutchinson and Hudson concurred in the judgment and opinion. |

## OPINION

¶ 1    The City of Waukegan filed a tax objection concerning certain abandoned, contaminated lakefront property it obtained by way of trustee's deeds executed by the trustee in bankruptcy for the Outboard Marine Corporation (OMC). The city claimed that the 2000 through 2002 real property taxes levied against the property and billed to the city were abated (*i.e.*, null and void) pursuant to section 21–95 of the Property Tax Code (35 ILCS 200/21–95 (West 2008)). On the parties' cross-motions for summary judgment, the trial court entered judgment against the city and in favor of defendant, Robert Skidmore as Lake County treasurer. The city appeals, arguing that the applicable version of section 21–95 of the Property Tax Code permits abatement of the existing property taxes on the subject property, which the city acquired through bankruptcy proceedings. For the following reasons, we reverse and enter summary judgment in the city's favor.

¶ 2                         I. BACKGROUND

¶ 3    In September 2005, the city, a home-rule municipality in Lake County, acquired fee simple title in four parcels of lakefront real property, totaling 56 acres, formerly owned by OMC (the subject property).[1] OMC, which manufactured, sold, and distributed outboard marine engines and recreational boats, had used the property as its world headquarters and as a manufacturing facility. A large abandoned office building sits on the property, which

[1]The parcels bear the following property index numbers: 08–15–300–029; 08–22–100–047; 08–22–100–052; 08–22–100–063.

also contains an abandoned manufacturing plant and three PCB[2] containment cells.

¶ 4      The events that led to the conveyance of the subject property to the city were as follows. On December 22, 2000, OMC petitioned for relief under chapter 11 of the federal Bankruptcy Code. On August 20, 2001, the bankruptcy court converted OMC's case to a chapter 7 liquidation and transferred OMC's property, including the subject property, to the trustee in bankruptcy. Prior to OMC's bankruptcy filing, the subject property was listed as a Superfund[3] site, and it continues to be listed as a portion of the Superfund site designated as the Outboard Marine Corp NPL Site (EPA ID: IL00802827).

¶ 5      On November 1, 2001, the trustee moved in bankruptcy court to abandon, *inter alia*, the subject property, arguing that it was of inconsequential value and benefit to the bankruptcy estate. On November 12, 2001, the city enacted an ordinance, authorizing negotiations to purchase the subject property or, alternatively, to acquire the property through condemnation proceedings. On December 11, 2002, the bankruptcy court granted the trustee's motion and authorized the trustee to enter into an option agreement with the city, wherein the city would acquire the property at such time, if ever, as the city and the federal and Illinois environmental protection agencies approved a consent decree concerning the environmental contamination issues, future containment cell monitoring, and potential reuse. In its order, the bankruptcy court declared the abandonment effective as of the day prior, December 10, 2002. On January 9, 2003, the option agreement (between the city as purchaser and the trustee as seller) was recorded with the Lake County recorder of deeds. In a provision entitled "Method of Conveyance," the option agreement stated that the trustee "shall execute *** Trustee's deeds *** conveying title to" the city.

¶ 6      The city and the federal and Illinois environmental protection agencies successfully negotiated an agreement that was finalized by the entry of a supplemental consent decree on June 23, 2005. Subsequently, on September 30, 2005, the city caused the trustee's deeds to be recorded with the Lake County recorder of deeds.[4]

¶ 7      The city first received the real property tax bills for the tax years at issue in this appeal (*i.e.*, 2000 through 2002) when it received the 2007 tax bills for the property. On

---

[2]Polychlorinated biphenyl.

[3]A Superfund site is a place on the National Priorities List (NPL), which contains places "considered national priorities for environmental remediation because of known or threatened releases of hazardous substances." *US Magnesium, LLC v. Environmental Protection Agency*, 630 F.3d 188, 189 (D.C. Cir. 2011). The NPL was established under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) (42 U.S.C. § 9601 *et seq.* (2006)), which is commonly known as the Superfund law. *City of Fresno v. United States*, 709 F. Supp. 2d 888, 916 (E.D. Cal. 2010).

[4]The deeds provide that the bankruptcy trustee, in consideration of $10 (per parcel), "in pursuance of the power and authority vested in the [trustee] as said Trustee, and of every other power and authority the [trustee] hereunto enabling," conveyed and quitclaimed to the city, in fee simple, the subject property.

November 19, 2008, the city filed the present tax objection (concerning the taxes for the 2000 through 2002 tax years).[5]

¶ 8     The city relied on section 21–95 of the Property Tax Code, which provided, in relevant part:

> "§ 21–95. Tax abatement after acquisition by a governmental unit. When any county or municipality acquires property through *** judicial deed, *** all due or unpaid property taxes and existing liens for unpaid property taxes imposed or pending under any law or ordinance of this State or any of its political subdivisions shall become null and void." 35 ILCS 200/21–95 (West 2008).

The city noted that it acquired the subject property by a trustee's deed from the trustee of the OMC bankruptcy estate pursuant to a bankruptcy court order. A deed of conveyance in this factual situation, it alleged, is a "judicial deed" under section 21–95 and, pursuant to that section, the real property taxes on the subject property were null and void.[6]

¶ 9     On June 28, 2010, following a hearing on the parties' cross-motions for summary judgment, the trial court found that the city did not take title to the subject property pursuant to a "judicial deed" and, therefore, section 21–95 of the Property Tax Code did not apply to render the taxes null and void. The court denied the city's summary judgment motion and granted defendant's motion. The city appeals.

¶ 10                                II. ANALYSIS

¶ 11    The city argues that the trial court erred in denying its summary judgment motion and granting defendant's motion. The city contends that the real property taxes (for the tax years 2000 through 2002) for the subject property, which it acquired by trustee's deeds that were authorized by a bankruptcy court, are abated (*i.e.*, null and void) under section 21–95 of the Property Tax Code. For the following reasons, we agree with the city.

¶ 12    In this case of first impression, we assess the propriety of the trial court's summary judgment rulings in the context of a statutory interpretation issue. Summary judgment is proper where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2008). Statutory construction issues involve questions of law. *In re Estate of Dierkes*, 191 Ill. 2d 326, 330 (2000). We review *de novo* summary judgment rulings and statutory interpretation issues. *DesPain v. City of Collinsville*, 382 Ill. App. 3d 572, 577 (2008).

¶ 13    The city argues that section 21–95 of the Property Tax Code applies here to abate the taxes at issue, because it acquired the property via trustee's deeds, a term encompassed by

[5]Previously, the city had obtained tax-exempt status for the subject property beginning with the 2003 tax year. Thus, presently, the property is exempt from real property taxation.

[6]The city also alleged that it has expended funds to secure the property from unauthorized public access and that it spends $45,000 per year to operate and maintain environmental monitoring and containment wells and for federal environmental reporting.

"judicial deed." It notes that no case law has interpreted the term "judicial deed" and that there is no definition of the term in the Property Tax Code. The city asserts that the statute, which has been amended twice, has been broadened to incorporate the present situation. The city urges that this history, along with its policy argument (discussed below), lead only to the conclusion that section 21–95 renders the taxes at issue null and void.

¶ 14    The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent, and the plain language of the statute is the best indication of that intent. *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 37-38 (2009). When the language is unambiguous, the statute must be applied as written without resorting to aids of construction. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006); see also *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008). "A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses." *Ready v. United/Goedecke Services, Inc.*, 232 Ill. 2d 369, 377 (2008). When interpreting a tax exemption statute, we strictly construe the statute in favor of taxation and against exemption. *Quad Cities Open, Inc. v. City of Silvis*, 208 Ill. 2d 498, 507 (2004).[7]

¶ 15    With these principles in mind, we review the three versions of the statute. The version at issue in this appeal was the second version, which became effective January 1, 2000. See Pub. Act 91–305, § 5 (eff. Jan. 1, 2000). Thus, in 2008 (when the city filed its tax objection), section 21–95 of the Property Tax Code provided as follows:

"§ 21–95. Tax abatement after acquisition by a governmental unit. *When any* county or *municipality acquires property* through the foreclosure of a lien, *through a judicial deed*, through the foreclosure of receivership certificate lien, or by acceptance of a deed of conveyance in lieu of foreclosing any lien against the property, or when a government unit acquires property under the Abandoned Housing Rehabilitation Act, or when any county or other taxing district acquires a deed for property under Section 21–90 [permitting a county to bid at a tax sale after foreclosure] or Sections 21–145 and 21–260 [addressing tax scavenger sales allowing sale of real property for tax delinquency], *all due or unpaid property taxes and existing liens for unpaid property taxes imposed or pending under any law or ordinance of this State or any of its political subdivisions shall become null and void*." (Emphases added.) 35 ILCS 200/21–95 (West 2008).

Section 21–95 was first enacted in 1994 (Pub. Act 88–455, art. 21, § 21–95 (eff. Jan. 1, 1994)) and provided at that time as follows:

"§ 21–95. Tax abatement after acquisition by a governmental unit. *When any* county or *municipality acquires property* through the foreclosure of a lien authorized under Section 11–31–1 of the Illinois Municipal Code or *through a judicial deed issued under that Section*, or foreclosure of receivership certificate lien or by acceptance of a deed of conveyance in lieu of foreclosing any receivership certificate lien or other lien against the property, or when a government unit acquires property under the Abandoned Housing Rehabilitation Act, or when any county or other taxing district acquires a deed for

---

[7]Tax abatement and tax exemption statutes are construed in the same manner. See, *e.g.*, *Land Title Bank & Trust Co. v. Marshall*, 34 A.2d 71, 72 (Pa. 1943).

property under Section 21–90 or Sections 21–145 and 21–260, *all due or unpaid property taxes and existing liens for unpaid property taxes imposed or pending under any law or ordinance of this State or any of its political subdivisions shall become null and void.*" (Emphases added.) 35 ILCS 200/21–95 (West 1996).

Thus, in its initial version, the statute's reference to a judicial deed was to a deed issued under section 11–31–1 of the Illinois Municipal Code, which addresses suits by municipalities for the demolition, repair, enclosure, or remediation of unsafe property. 65 ILCS 5/11–31–1 (West 2008). The second version of the statute, which is at issue in this case, does not limit "judicial deed" to one issued in the context of a suit brought under section 11–31–1. Thus, by eliminating the limitation that a judicial deed be one issued pursuant to section 11–31–1, the 2000 amendment to section 21–95 of the Property Tax Code clearly broadened the term "judicial deed."

¶ 16 A third version of the statute became effective July 21, 2010. Pub. Act 96–1142, § 5 (eff. July 21, 2010). It provides:

"§ 21–95. Tax abatement after acquisition by a governmental unit. *When any* county, *municipality*, school district, or park district *acquires property* through the foreclosure of a lien, *through a judicial deed*, through the foreclosure of receivership certificate lien, or by acceptance of a deed of conveyance in lieu of foreclosing any lien against the property, or when a government unit acquires property under the Abandoned Housing Rehabilitation Act, or when any county or other taxing district acquires a deed for property under Section 21–90 or Sections 21–145 and 21–260, *or when any* county, *municipality*, school district, or park district *acquires title to property that was to be transferred to that* county, *municipality*, school district, or park district *under the terms of an* annexation agreement, *development agreement, donation agreement,* plat of subdivision, *or zoning ordinance by an entity that* has been dissolved or is being dissolved or *has been in bankruptcy proceedings or is in bankruptcy proceedings, all due or unpaid property taxes and existing liens for unpaid property taxes imposed or pending under any law or ordinance of this State or any of its political subdivisions shall become null and void.*" (Emphases added.) Pub. Act 96–1142, § 5 (eff. July 21, 2010).

¶ 17 The city argues that the second version of the statute, which is at issue in this appeal, contains no limitation on the term "judicial deed" and, so, the term should be broadly construed to incorporate the current situation. It maintains that the only way it was able to obtain title to the subject property was through the bankruptcy court's order and that the deeds by which it took title were *judicially authorized*, a term it argues should be encompassed by the statute's reference to a "judicial deed." As to the amendments to section 21–95, the city argues that both the second and the current versions of the statute show that the legislative intent was to allow a municipality to acquire property in certain situations without having to pay property taxes that were not paid by the prior owner. This is prudent policy, it urges, because it permits a governmental entity to use its resources to put the property back onto the tax rolls or to improve it for a public purpose. The city asserts that, if the bankruptcy court had granted the trustee's request to abandon the property and if the city had not agreed to a transfer of the property, the property would have received little attention from the federal environmental protection agency and would have "become a

dangerous orphan that the [city] and its municipal employees would assume liability for by default." Instead, the city entered into negotiations to acquire the property for a nominal price; the property was transferred to the city pursuant to bankruptcy court approval; and the city caused the trustee's deeds to be recorded with defendant's office. The city contends that the General Assembly could not have intended that the city be responsible for real estate taxes left behind by the bankrupt owner of a Superfund site. It notes that, in taking title to valueless, environmentally contaminated property, it acted responsibly by taking on a "major financial obligation" to protect its citizens from a potential public nuisance and to protect them and the environment from any further environmental problems with the site.

¶ 18    Finally, the city also points to section 11–31–1 of the Illinois Municipal Code as an example of this state's policy that municipalities avoid property tax payments when they acquire abandoned property. That statute addresses a municipality's demolition, repair, or enclosure of unsafe buildings and provides that, in cases where a property is abandoned, a municipality may petition the court to issue a judicial deed for the property, and such conveyance extinguishes "all existing ownership interests in, liens on, and other interest in the property, including tax liens, and shall extinguish the rights and interests of any and all holders of a bona fide certificate of purchase of the property for delinquent taxes." 65 ILCS 5/11–31–1(d) (West 2008).

¶ 19    In response, defendant argues that an order from a bankruptcy court giving a party the authority to dispose of property in a certain manner is not a judicial deed. Defendant points to the bankruptcy court's order, noting that it states that the "Trustee may enter into an option agreement with the City." Defendant contends that the order is not a judicial deed and does not convey to the city title to the subject property. He urges that the General Assembly did not contemplate the present scenario in the second version of section 21–95 of the Property Tax Code. Defendant further emphasizes that the city obtained the property through execution of the option agreement and that, pursuant to the agreement, the trustee executed trustee's deeds conveying title to the subject property. He notes that a trustee's deed is not a judicial deed and that bankruptcy trustees are not judges. Defendant asserts that the city could have addressed the tax issue with the trustee in the option agreement.

¶ 20    Defendant also takes issue with the city's argument that the term "judicial deed" encompasses a deed that is judicially authorized. In defendant's view, a judicial deed is an actual deed issued by a court. To support this view, defendant points to several examples in the Illinois statues where such deeds are mentioned. First, defendant points out that, at the conclusion of a foreclosure sale, a judge issues a judicial deed. See 735 ILCS 5/15–1509(a) (West 2008) ("the court *** shall *** promptly execute a deed to the holder or purchaser sufficient to convey title"). Defendant notes that this deed is actually issued by the court and not by the sheriff who administers the sale. As a second example, defendant points to deeds issued pursuant to section 11–31–1 of the Illinois Municipal Code (a section upon which the city also relies), whereby a court issues an actual deed and not an order giving a third party the right to issue a deed. 65 ILCS 5/11–31–1(d) (West 2008) ("the court shall issue a quitclaim judicial deed for the property to the requesting party").

¶ 21    Defendant contends that only the third (and current) version of section 21–95 of the Property Tax Code contains specific language allowing for tax abatement in bankruptcy

-7-

situations. He argues that the absence of the bankruptcy references in the second version of the statute indicates that abatement was not available while that version was in effect (such as in this case).

¶ 22     For the following reasons, we conclude that the term "judicial deed" is unambiguous and encompasses the present scenario. The term "judicial deed" is not defined in Black's Law Dictionary. One secondary source notes that a "judicial deed" is a term "often used to describe any deed from a sale resulting from a judicial proceeding." Alvin L. Arnold, Real Estate Investor's Deskbook § 8:94 (3d ed. 1994); see also 2 Alvin L. Arnold & Myron Kove, Modern Real Estate Forms § 30:1 (Nov. 2010) (same).

¶ 23     Although there are references in the Illinois statutes to a "judicial deed," the statutes do not define the term. See, *e.g.*, 55 ILCS 5/5–1121(c) (West 2008) (in Counties Code provision addressing a county's demolition, repair, or enclosure of unsafe buildings, where a property is abandoned, a county may petition the court to issue a judicial deed for the property and such conveyance "extinguish[es] all existing ownership interests in, liens on, and other interest in the property, including tax liens"); 60 ILCS 1/85–50(d) (West 2008) (similar Township Code abandoned property provision); 65 ILCS 5/11–31–1(d) (West 2008) (similar Illinois Municipal Code abandoned property provision); 310 ILCS 50/9 (West 2008) (in Abandoned Housing Rehabilitation Act statute providing for the issuance of a quitclaim judicial deed to a nonprofit housing improvement organization in cases where certain residential real estate has been abandoned and providing that the property shall be used for low and moderate income housing for at least 10 years); 420 ILCS 46/20(2) (West 2008) (in Illinois Radon Awareness Act, refers to a judicial deed issued pursuant to a foreclosure sale); 765 ILCS 77/15(2) (West 2008) (similar reference in Residential Real Property Disclosure Act).

¶ 24     If anything is clear from the foregoing statutory references, it is that a judicial deed is a form of conveyance and that it is a deed issued pursuant to a judicial sale. In confirming this, a secondary source states:

"A deed executed pursuant to a judicial sale is made under the authority of a specific order of court. In practice, a judicial sale is made of the property by the court through the medium of some officer who is appointed to make the sale or who is acting under the jurisdiction of the court in a particular proceeding. Judicial sales are ordinarily reported to the court, which then orders or confirms the sale and also orders the execution of a deed or conveyance.

Judicial deeds usually recite all of the pertinent facts or events leading up to the sale." Nancy Saint-Paul, Basye Clearing Land Titles Third Edition § 3:13 (2010-11 ed.).

¶ 25     A "judicial sale" is elsewhere defined as a sale "conducted under the authority of a judgment or court order, such as an execution sale.–Also termed *sheriff's sale*." Black's Law Dictionary 1455 (9th ed. 2009); see also *Maywood-Proviso State Bank v. Cokinis*, 11 Ill. App. 3d 659, 662 (1973) (a judicial sale is based on an order to sell specific property; is conducted by an agent or officer of the court in pursuance of the court's directions; the court is the vendor; and the sale is not complete until it has been approved by the court). An "execution sale" is defined as a "forced sale of a debtor's property by a government official

carrying out a writ of execution.–Also termed *forced sale; judgment sale; sheriff's sale.*" Black's Law Dictionary 1454 (9th ed. 2009). "The [judicial] sale must result from judicial proceedings and be based on a prior judgment which directs that the real property be sold." 3 Illinois Real Property § 20:46 (updated February 2011). Finally, there is authority for the proposition that "a bankruptcy sale is a judicial sale." *In re Dennis Mitchell Industries, Inc.*, 419 F.2d 349, 359 (3d Cir. 1969); see also Black's Law Dictionary 849 (6th ed. 1990).

¶ 26    We conclude, based on the foregoing, that, at least through the second version of the statute, the term "judicial deed" unambiguously encompasses the present situation. This is so because the sale (via the option agreement) to the city of the subject property was a judicial sale conducted under the bankruptcy court's supervision and order. In conveying the trustee's deeds to the city, the bankruptcy trustee acted pursuant to the bankruptcy court's order,[8] and the city subsequently recorded the sale. We disagree with defendant's argument (unsupported by any definitional citations) that the term "judicial deed" is limited to an actual deed issued by a judge. We do not read such limitation in the statutory references to a judicial deed. Again, the term is not defined in the Illinois statutes and the mere fact that the *Illinois* statutory references to such a deed might refer to one directly issued by a circuit court judge reflects defendant's reading only because the statutory references address proceedings in *Illinois* circuit courts and not *federal* bankruptcy courts. For this reason, statutory references to a judicial deed are of little value in our analysis.

¶ 27    There is a clear public policy that municipalities not be subject to real property taxes. See 35 ILCS 200/15–75 (West 2008) (municipal property used for public purposes is exempt from real property taxation). The legislative intent of section 21–95 is clearly in furtherance of that policy, as it addresses tax abatement following, as relevant here, a municipality's acquisition of property. Also comporting with that policy is that the term "judicial deed" is consistently defined fairly broadly. Thus, we conclude that the term "judicial deed" unambiguously encompasses judicially authorized deeds. Further, as there are no conflicting definitions, there are no doubts we need resolve against exemption. *Cf. Zebra Technologies Corp. v. Topinka*, 344 Ill. App. 3d 474, 484 (2003) (because tax exemption statutes are strictly construed, any doubts as to applicability of exemption are resolved in favor of taxation).

¶ 28    We next address the effect, if any, of the amendment resulting in the third and current version of the statute. "A subsequent amendment to a statute may be an appropriate source for discerning legislative intent." *In re Detention of Lieberman*, 201 Ill. 2d 300, 320-21 (2002). Although an amendment to a statute creates a presumption that the amendment was intended to change the law as it previously existed, the presumption may be overcome by other considerations. *People v. Parker*, 123 Ill. 2d 204, 211 (1988). "The circumstances surrounding the amendment should be considered and: 'If they indicate that the legislature

_____

[8]See Black's Law Dictionary 1656 (9th ed. 2009) (a bankruptcy trustee is a "person appointed by the U.S. Trustee or elected by creditors or appointed by a judge to administer the bankruptcy estate during a bankruptcy case"; the trustee's duties include, *inter alia*, "collecting and reducing to cash the assets of the estate").

intended only to interpret the original act, the presumption of an intention to change the law is rebutted.' " *Parker*, 123 Ill. 2d at 211 (quoting *People v. Youngbey*, 82 Ill. 2d 556, 563 (1980)). Factors that indicate whether an amendment is merely a clarification rather than a substantive change in the law include: (1) whether the legislature declared that it was clarifying a prior enactment; (2) whether there existed a conflict or ambiguity prior to the amendment; and (3) whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history. For example, conflicting appellate court decisions may negate the presumption that the legislature's removal of a word from a statute changed the law; as there was no clear interpretation of the law to be changed, the amendment was meant to clarify, not change, prior law. See *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 300 (2010).

¶ 29    For the following reasons, we conclude that the 2010 amendment to the statute broadened the provision, but does not affect our interpretation of "judicial deed." Again, the statute currently states (with the changes from the second version emphasized), as follows:

> "§ 21–95. Tax abatement after acquisition by a governmental unit. When any county, municipality, *school district, or park district* acquires property through the foreclosure of a lien, through a judicial deed, through the foreclosure of receivership certificate lien, or by acceptance of a deed of conveyance in lieu of foreclosing any lien against the property, or when a government unit acquires property under the Abandoned Housing Rehabilitation Act, or when any county or other taxing district acquires a deed for property under Section 21–90 or Sections 21–145 and 21–260, *or when any county, municipality, school district, or park district acquires title to property that was to be transferred to that county, municipality, school district, or park district under the terms of an annexation agreement, development agreement, donation agreement, plat of subdivision, or zoning ordinance by any entity that has been dissolved or is being dissolved or has been in bankruptcy proceedings or is in bankruptcy proceedings*, all due or unpaid property taxes and existing liens for unpaid property taxes imposed or pending under any law or ordinance of this State or any of its political subdivisions shall become null and void." (Emphases added.) Pub. Act 96–1142, § 5 (eff. July 21, 2010).

¶ 30    The 2010 amendment resulting in the third version of section 21–95 changed the statute by adding: (1) school districts and park districts to the list of governmental units whose taxes might be abated after certain acquisitions; and (2) certain acquisitions from entities in dissolution or bankruptcy proceedings to the list of methods of acquisition that may result in tax abatement. The fact that the General Assembly added to the list of acquisition methods and specifically referenced bankruptcy proceedings does not alter our conclusion that the taxes at issue here are abated. First, the legislature did not specifically alter the "judicial deed" clause. Second, the new language encompasses slightly different and broader acquisition methods than the term "judicial deed." Specifically, the bankruptcy language added to the current version of section 21–95 is prefaced by the clause "acquires title to property that was to be transferred to that *** municipality" under an agreement, plat of subdivision, or zoning ordinance. Pub. Act 96–1142, § 5 (eff. July 21, 2010). In contrast, the clause preceding the reference to "judicial deed" reads only: "When any *** municipality *** acquires property *** through a judicial deed." 35 ILCS 200/21–95 (West 2008). The

acquisition of title to property (under the terms of an agreement, plat of subdivision, or zoning ordinance) is not the same as acquiring a judicial deed to property. Title means the "right to or ownership in land" (Black's Law Dictionary 1485 (6th ed. 1990)), whereas a deed is, generally, a writing that conveys an interest in land and whose primary purpose is to pass title (*Neppl v. Murphy*, 316 Ill. App. 3d 581, 590 n.1 (2000)), and a judicial deed, as previously noted, is, generally, a deed issued in the context of a judicial sale (see, *e.g.*, Nancy Saint-Paul, Basye Clearing Land Titles Third Edition § 3:13 (2010-11 ed.)). Thus, the bankruptcy language that was added with the most recent amendment to section 21–95 addresses somewhat broader acquisition scenarios than those encompassed by judicial deeds and does so with no modifications to the "judicial deed" clause. Thus, the new language does not alter our interpretation of "judicial deed."

¶ 31     Accordingly, the most significant change in the law in 2010 was the addition of school districts and park districts to the list of governmental units whose taxes are abated after certain acquisitions. This is clear from the plain language of the statute, and, although we need not look beyond the plain language (*Stroger v. Regional Transportation Authority*, 201 Ill. 2d 508, 524 (2002)), we note that the legislative history confirms this reading. A review of the legislative history of the act resulting in the third and current version of section 21–95 reflects that the General Assembly primarily sought to give park districts and school districts the same ability to abate taxes as had previously been granted only to counties and municipalities:

> "House Bill 5144 amends the Property Tax Code. It provides park districts and school boards an abatement of all due unpaid property taxes and liens for unpaid property taxes when it acquires property through a foreclosure or lien. Counties ... counties and municipalities already have this abatement when acquiring property through foreclosure or lien. Simply put, this Bill puts park districts and ... and school boards on the same footing as municipalities and counties." 96th Ill. Gen. Assem., House Proceedings, March 11, 2010, at 89-90 (statements of Representative Connelly); see also 96th Ill. Gen. Assem., Senate Proceedings, April 27, 2010, at 125 (statements of Senator Pankau).

¶ 32     Accordingly, we conclude that the term "judicial deed" in section 21–95 of the Property Tax Code encompasses the city's acquisition of the subject property by trustee's deeds authorized by the bankruptcy court and that the section operates to abate the taxes at issue.

¶ 33                    III. CONCLUSION

¶ 34     For the foregoing reasons, we reverse the circuit court of Lake County's grant of summary judgment to defendant. Instead, we grant the city's summary judgment motion.

¶ 35     Reversed; judgment entered.