2016 IL App (2d) 150917
No. 2-15-0917
Opinion filed June 9, 2016

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE HAMPSHIRE TOWNSHIP ROAD DISTRICT, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 15-CH-553 |
| JOHN A. CUNNINGHAM, in His Official Capacity as the Kane County Clerk, | ) ) ) | Honorable David R. Akemann, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices McLaren and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, the Hampshire Township Road District (District), sought to compel defendant, John A. Cunningham, in his official capacity as the Kane County clerk (clerk), to extend a permanent road-fund tax authorized by the electors and levied by the township pursuant to section 6-601 of the Illinois Highway Code (Highway Code) (605 ILCS 5/6-601 (West 2014)). The clerk refused to permit the District to levy the tax, asserting that it may be authorized only following a new-rate referendum pursuant to section 18-190(a) of the Property Tax Extension Limitation Law (PTELL) (35 ILCS 200/18-190(a) (West 2014)), which, in turn, requires a direct referendum pursuant to the PTELL's ballot requirements and article 28 of the Election Code (10

ILCS 5/28-1 *et seq.* (West 2014)). On cross-motions for summary judgment, the trial court granted the clerk's motion and denied the District's motion. The District appeals. We affirm.

¶ 2                                   I. BACKGROUND

¶ 3                                   A. The Referendum

¶ 4     The District is a nonhome-rule unit of local government in Kane County. It operates subject to article 6 of the Highway Code (605 ILCS 5/6-101 *et seq.* (West 2014)).

¶ 5     Section 6-601(a) of the Highway Code provides, in relevant part:

"On the petition of 25 legal voters of any road district to the district clerk he shall order a referendum on the proposition for or against an annual tax not to exceed .167% of the value of the taxable property, as equalized or assessed by the Department of Revenue, for the purpose of constructing or maintaining gravel, rock, macadam or other hard roads, or for improving, maintaining or repairing earth roads by draining, grading, oil treating or dragging. Such petition shall state the location and route of the proposed road or roads, and shall also state the annual rate per cent not exceeding .167% of the value, as equalized or assessed by the Department of Revenue. The referendum shall be held at the next annual town meeting, at a special town meeting called for that purpose, or at an election in accordance with the general election law. If the referendum is ordered to be held at the town meeting, or at a special town meeting called for that purpose, the district clerk shall give notice that at the next annual town meeting or special town meeting the proposition shall be voted upon. Such notice shall set forth the proposition and shall be given by publication in a newspaper of general circulation in the township and by posting notices in at least 10 of the most public places in the town at least 10 days prior to the annual or special meeting. If the referendum is ordered to be held at an election, the

district clerk shall certify that proposition to the proper election officials, who shall

submit the proposition in accordance with the general election law." 605 ILCS 5/6-

601(a) (West 2014).

Thus, the Highway Code allows a tax for the foregoing purposes only when it is initiated by

citizens via a referendum held at the next annual town meeting, a special meeting, or an election.

¶ 6    Pursuant to section 6-601, 25 electors in the District petitioned for a referendum, to be

held at the 2014 annual town meeting, on the question of whether the District shall have the

power to levy a permanent road tax (PRT) for constructing or maintaining gravel, rock,

macadam, or other hard roads or for improving, maintaining, or repairing earth roads by

draining, grading, oil treating, or dragging. The clerk ordered the referendum. Accordingly, on

April 8, 2014, Hampshire Township conducted its annual town meeting and held a referendum

on the question of the tax. Nineteen electors unanimously approved the proposition.

¶ 7    The District sought to implement the levy and forwarded the levy documents to the clerk

to extend the tax. The clerk refused, asserting that a new-rate referendum that complied with the

PTELL and the Election Code was required.

¶ 8                                  B. The PTELL

¶ 9    Generally, when nonhome-rule units of local government in Kane County levy taxes,

they are subject to the PTELL. The clerk administers and enforces the PTELL by extending

taxes only in compliance with that statute. See, *e.g.*, 35 ILCS 200/18-15, 18-45 (West 2014).

¶ 10   Section 18-190 of the PTELL, which is at issue here, addresses when a referendum is

needed to authorize a tax increase. Subsection (a) provides, in relevant part:

"(a) *If a new rate is authorized by statute to be imposed without referendum or is subject*

*to a backdoor referendum, as defined in Section 28-2 of the Election Code, the governing*

*body of the affected taxing district before levying the new rate shall submit the new rate to direct referendum under the provisions of this Section and of Article 28 of the Election Code.* Notwithstanding any other provision of law, the levies authorized by Sections 21-110 and 21-110.1 of the Illinois Pension Code shall not be considered new rates; however, nothing in this amendatory Act of the 98th General Assembly authorizes a taxing district to increase its limiting rate or its aggregate extension without first obtaining referendum approval as provided in this Section. Notwithstanding the provisions, requirements, or limitations of any other law, any tax levied for the 2005 levy year and all subsequent levy years by any taxing district subject to this Law may be extended at a rate exceeding the rate established for that tax by referendum or statute, provided that the rate does not exceed the statutory ceiling above which the tax is not authorized to be further increased either by referendum or in any other manner. *Notwithstanding the provisions, requirements, or limitations of any other law, all taxing districts subject to this Law shall follow the provisions of this Section whenever seeking referenda approval after March 21, 2006 to (i) levy a new tax rate authorized by statute or (ii) increase the limiting rate applicable to the taxing district.* All taxing districts subject to this Law are authorized to seek referendum approval of each proposition described and set forth in this Section." (Emphases added.) 35 ILCS 200/18-190(a) (West 2014).

¶ 11                                C. The District's Complaint

¶ 12    Here, after the clerk refused to permit the District to levy the PRT, the District, on April 24, 2015, filed a declaratory judgment suit against the clerk. The District asked the trial court to order the clerk to extend the PRT for the District, based upon the authority granted to the District

by the 2014 referendum. The District argued that the PRT was outside the scope of section 18-190(a) of the PTELL. It noted that section 18-190(a) requires a direct referendum for a new rate only when the new rate is: (1) authorized by statute to be imposed without a referendum; or (2) subject to a backdoor referendum. The PRT, it argued, is not a new rate authorized by statute to be imposed *without* a referendum, as the rate was approved *by referendum*; and it is not subject to a backdoor referendum.[1]

¶ 13    On June 4, 2015, the clerk moved for summary judgment, arguing that the referendum question submitted by the District did not comply with section 18-190(a) of the PTELL. First, it did not substantially comply with the PTELL's required format for referendum questions. Second, the District did not submit the referendum question to the voters at an election, as required by the PTELL, which, in turn, references the Election Code. (The clerk also noted in reply that 19 electors voted for the levy; the township has a population of 7,569.) Further, the clerk noted that the Department of Revenue's technical manual defined a "new rate" as one that had not previously been levied. Illinois Department of Revenue, Property Tax Extension Limitation Law: Technical Manual, at 18-19 (December 2013).

---

[1] A backdoor referendum "is the submission of a public question to the voters of a political subdivision, *initiated by a petition of voters or residents of such political subdivision*, to determine whether an action by the governing body of such subdivision shall be adopted or rejected." (Emphasis added.) 10 ILCS 5/28-2 (West 2014). In contrast, a direct or front-door referendum is initiated by a local governmental unit's adoption of an ordinance or resolution. Shawn P. Flaherty, *"Dollars CPI, and Voter Empowerment": Public Act 94-976 and Its Impact on Local Government Tax Referenda*, 27 N. Ill. U. L. Rev. 377, 383 n.38 (2007).

¶ 14 On June 9, 2015, the District moved for summary judgment, arguing that the PRT was not a new rate authorized by statute to be imposed "without referendum"; rather, it must be approved in advance with a referendum pursuant to section 6-601 of the Highway Code. Also, it argued that the PRT was not subject to a backdoor referendum. Therefore, according to the statute's plain language, the PRT was outside the scope of section 18-190(a). The District asserted that the clerk's reading ignored the first sentence of section 18-190(a). Further, the District noted case law consistent with its reading and argued that Lake County had administered the PTELL and the Highway Code in the fashion that the District advanced.

¶ 15 On August 13, 2015, the trial court granted the clerk's summary judgment motion and denied the District's motion. It found that the PTELL requires a section 18-190(a) direct referendum before the clerk can extend the " 'new rate' " sought by the District. Although the statute "could be interpreted in either direction," the PTELL's purpose and intent, the court found, warranted a ruling in the clerk's favor, which would give the citizens potentially subject to the tax the opportunity to have the question presented in a referendum. The District appeals.

¶ 16                                    II. ANALYSIS

¶ 17 The District argues that the summary judgment rulings were erroneous because the PRT is not a new rate authorized by statute to be imposed "without referendum." Rather, it was specifically authorized by a referendum (specifically, by the electors' unanimous vote at the 2014 annual town meeting) pursuant to section 6-601 of the Highway Code, which requires a referendum before imposing a PRT. Accordingly, the District argues, section 18-190(a) does not apply.

¶ 18 The clerk maintains that, as the District is subject to the PTELL, it was required to follow the referenda procedures in section 18-190(a) to levy the PRT. It notes that the section states that

the governing body "shall submit the new rate to direct referendum" pursuant to section 18-190's ballot requirements and article 28 of the Election Code. 35 ILCS 200/18-190(a) (West 2014). The District did not comply with this provision, in that it did not submit the question to direct referendum pursuant to the Election Code and the question submitted to the electors did not substantially comply with the PTELL's referendum-question format. Alternatively, the clerk argues, to the extent that the PTELL is ambiguous or conflicts with the Highway Code, the legislative intent of the PTELL required the District to conduct a referendum pursuant to the PTELL and the Election Code. For the following reasons, we agree with the clerk.

¶ 19 Summary judgment is proper where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. [Citation.] However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. "Where a case is decided through summary judgment, our review is *de novo*." *Id.* ¶ 30. Similarly, we review *de novo* statutory construction issues. *NDC LLC v. Topinka*, 374 Ill. App. 3d 341, 358 (2007).

¶ 20 In construing a statute, our primary function is to give effect to the legislature's intent. *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008). The best indicator of the legislature's intent is the plain and ordinary meaning of the statute's language. *Id.* When a statute is clear and unambiguous, a court must give effect to the plain and ordinary meaning of the language without resort to other tools of statutory construction. *Id.* We may not depart from the plain

language of the statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. *In re Consolidated Objections to Tax Levies of School District No. 205*, 193 Ill. 2d 490, 496 (2000). Also, we assume that the legislature did not intend absurdity, inconvenience, or injustice. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000).

¶ 21 We note that public officials have no taxing power except that which is delegated to them by the legislature. *Santiago v. Kusper*, 133 Ill. 2d 318, 325 (1990) (citing Ill. Const. 1970, art. IX, § 10). The obligation of citizens to pay taxes is purely a statutory creation, and taxes can be levied, assessed, and collected only in the manner expressly spelled out by statute. *People ex rel. Eitel v. Lindheimer*, 371 Ill. 367, 371 (1939). "[T]o the extent that any ambiguity exists in the statute, established principles of statutory interpretation counsel that we afford substantial weight and deference to the interpretation given to the law by the administrative agency charged with its enforcement." *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 39 (2009). However, we are not bound by an agency's interpretation of a statute. *Denny's, Inc. v. Department of Human Rights*, 363 Ill. App. 3d 1, 7 (2005).

¶ 22 Again, section 18-190(a) of the PTELL provides, in relevant part:

"(a) *If a new rate is authorized by statute to be imposed without referendum or is subject to a backdoor referendum, as defined in Section 28-2 of the Election Code, the governing body of the affected taxing district before levying the new rate shall submit the new rate to direct referendum under the provisions of this Section and of Article 28 of the Election Code.* Notwithstanding any other provision of law, the levies authorized by Sections 21-110 and 21-110.1 of the Illinois Pension Code shall not be considered new rates; however, nothing in this amendatory Act of the 98th General Assembly authorizes

a taxing district to increase its limiting rate or its aggregate extension without first obtaining referendum approval as provided in this Section. Notwithstanding the provisions, requirements, or limitations of any other law, any tax levied for the 2005 levy year and all subsequent levy years by any taxing district subject to this Law may be extended at a rate exceeding the rate established for that tax by referendum or statute, provided that the rate does not exceed the statutory ceiling above which the tax is not authorized to be further increased either by referendum or in any other manner. *Notwithstanding the provisions, requirements, or limitations of any other law, all taxing districts subject to this Law shall follow the provisions of this Section whenever seeking referenda approval after March 21, 2006 to (i) levy a new tax rate authorized by statute or (ii) increase the limiting rate applicable to the taxing district.* All taxing districts subject to this Law are authorized to seek referendum approval of each proposition described and set forth in this Section." (Emphases added.) 35 ILCS 200/18-190(a) (West 2014).

¶ 23 The PTELL limits increases in property-tax extensions and amounts levied by taxing districts in nonhome-rule counties to which PTELL applies. 35 ILCS 200/18-195 (West 2014). The PTELL's purpose is to provide greater citizen control over the levy of taxes that citizens are required to pay. *Acme Markets*, 236 Ill. 2d at 42.

¶ 24 Section 18-190(a) provides that a direct referendum is required if a new rate is either: (1) authorized by statute to be imposed without referendum; or (2) subject to a backdoor referendum. 35 ILCS 200/18-190(a) (West 2014). The initial question here is whether the first condition applies; it is undisputed that the second does not. Thus, we must first determine whether the PRT constitutes a new rate authorized by statute to be imposed without referendum.

We conclude that, although the PRT is a new rate, it is not one that is statutorily authorized to be imposed *without* referendum. Rather, the Highway Code *requires* a referendum. Section 6-601(a) of the Highway Code provides, in relevant part:

> "On the petition of 25 legal voters of any road district to the district clerk he shall order a referendum on the proposition for or against an annual tax not to exceed .167% of the value of the taxable property, as equalized or assessed by the Department of Revenue, for the purpose of constructing or maintaining gravel, rock, macadam or other hard roads, or for improving, maintaining or repairing earth roads by draining, grading, oil treating or dragging. *** The referendum shall be held at the next annual town meeting, at a special town meeting called for that purpose, or at an election in accordance with the general election law." 605 ILCS 5/6-601(a) (West 2014).

Thus, section 6-601(a) provides that, on the petition of legal voters, the district clerk must order a referendum on a tax to construct or maintain roads. Further, the referendum is to be held at the next annual town meeting, a special town meeting, or an election. Here, District electors petitioned for such a referendum, the clerk ordered it, and, on April 8, 2014, at the annual town meeting, the electors unanimously approved the proposition for the PRT.

¶ 25     Turning to the central issue, we must next determine whether the next-to-last sentence of section 18-190(a) of the PTELL, upon which the clerk relies, requires a direct referendum here. It states: "Notwithstanding the provisions, requirements, or limitations of any other law, all taxing districts subject to this Law shall follow the provisions of this Section whenever seeking referenda approval after March 21, 2006 to (i) levy a new tax rate authorized by statute or (ii) increase the limiting rate applicable to the taxing district." 35 ILCS 200/18-190(a) (West 2014). It is undisputed that the District is subject to the PTELL. 35 ILCS 200/18-185 (West 2014)

(defining an "Affected county" to include one that is contiguous to a county of 3 million or more inhabitants). The sentence appears to override any provisions of other laws, requiring that the taxing entity follow section 18-190(a) (*i.e.*, conduct a direct referendum pursuant to the PTELL's ballot requirements and article 28 of the Election Code) when it seeks referendum approval to levy a new tax rate authorized by statute.

¶ 26    We must reconcile the two pertinent sentences in section 18-190(a). The first sentence of the provision requires a direct referendum if a new rate is, as relevant here, authorized by statute to be imposed *without* referendum, a condition we concluded is inapplicable here because the PRT was authorized by a statute *requiring* a referendum. Thus, the first sentence, on its own, does not require a direct referendum here. But the next-to-last sentence appears to be intended to override other laws and requires taxing entities to follow section 18-190(a) (*i.e.*, conduct a direct referendum) when seeking approval to levy a new rate authorized by statute (*without* the qualifier in the first sentence that it be one imposed without referendum). The District reads the provision as requiring a referendum only where one is not otherwise required. The trial court's rulings and the clerk's position, the District argues, ignore the first sentence of section 18-190(a) and render pointless the Highway Code's procedure. The District urges that the first sentence describes the scope of taxes to which the referendum procedure applies and that the balance of the section describes the form of referendum to be used to obtain voter approval for those taxes.

¶ 27    We reject the District's reading. We conclude that the next-to-last sentence is clear that, after March 21, 2006, a new rate must be submitted to direct referendum pursuant to the procedures in section 18-190(a) of the PTELL and the Election Code. The sentence contains unambiguous language that it overrides other laws and applies to all districts subject to the PTELL, including the District.

¶ 28   To the extent that the statute is ambiguous, statutory construction aids, such as legislative history and agency interpretations, support our holding.  The legislative history of section 18-190(a), upon which the clerk relies, does not directly address the issue before us, but it nevertheless supports our reading.  It reflects that the statute was intended to simplify and standardize the language of ballot measures for tax increases and to preclude (by closing existing loopholes) governing bodies from extracting more in taxes than they had initially informed the voters they would assess.  See 94th Ill. Gen. Assem., Senate Proceedings, May 3, 2006, at 36-37 (statements of Senator Harmon); 94th Ill. Gen. Assem., House Proceedings, April 12, 2006, at 7-8 (statements of Representative Tryon).  Indeed, the PTELL's referendum requirements, as the clerk notes, are more informative to voters than the Highway Code's requirements.  See 35 ILCS 200/18-190(a) (West 2014) (requiring, as part of the prescribed election notice, supplementary information, including an estimate of the tax amount extendable against property containing a single-family residence with a $100,000 fair market value; further requiring that the ballot specify the tax as a percentage of the "equalized assessed value of taxable property").  Our conclusion that the more onerous procedures of the PTELL apply to the PRT effectuates the legislative intent to promote clear ballot language and efficient government through direct referenda.

¶ 29   We find further support for our conclusion in the Department of Revenue's Technical Manual, which defines a new rate as one that has not previously been levied.  Illinois Department of Revenue, Property Tax Extension Limitation Law: Technical Manual, at 18-19 (December 2013).  Although the agency's guidance does not directly address the issue before us, its summary of the PTELL is consistent with our reading.  *Id.* at 38 (summarizing a relevant amendment to the statute and stating, "PTELL taxing districts must use only the referenda

options in the PTELL to raise more taxes than the cap allows. It *may not* use any other proposition found in Illinois statutes, including those based on Section 18-120 and Section 18-125 of the Property Tax Code." (Emphasis in original.)).

¶ 30    In summary, the trial court did not err in granting the clerk's summary judgment motion and denying the District's summary judgment motion.

¶ 31                          III. CONCLUSION

¶ 32    For the reasons stated, the judgment of the circuit court of Kane County is affirmed.

¶ 33    Affirmed.