2018 IL App (2d) 170967
No. 2-17-0967
Opinion filed September 25, 2018

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| DOUGLAS RENO, Individually and as the Representative of a Class of Similarly Situated Persons, | ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 16-CH-1341 |
| NEWPORT TOWNSHIP; THE NEWPORT TOWNSHIP HIGHWAY DISTRICT; RANDY WHITMORE, in His Official Capacity as Supervisor of Newport Township; RODGER EDMONDS, in His Official Capacity as Newport Township Highway Commissioner; COREY KIRSCHHOFFER, DIANE CRITTENDEN, RON MILLER, and BETH HARTFORD, in Their Official Capacities as Trustees of Newport Township; and CARLA WYCKOFF, in Her Official Capacity as Clerk of the County of Lake, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants-Appellees. | ) ) ) ) | Honorable Margaret A. Marcouiller, Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Hutchinson and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Douglas Reno, filed in the circuit court of Lake County a class-action complaint challenging a permanent road tax that was assessed on properties in Newport Township. He named as defendants Newport Township; the Newport Township Highway District; the Newport

Township supervisor, Randy Whitmore; the Newport Township highway commissioner, Rodger Edmonds; and the Newport Township trustees, Corey Kirschhoffer, Diane Crittenden, Ron Miller, and Beth Hartford (collectively, the township defendants). He also named Carla Wyckoff in her capacity as the county clerk. The court granted defendants' motions to dismiss the amended complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2016)). Plaintiff appeals. We affirm the judgment dismissing the amended complaint, as plaintiff's exclusive remedy is through the tax-objection procedures outlined in article 23 of the Property Tax Code (see 35 ILCS 200/23-5 *et seq.* (West 2016)).

¶ 2                                    I. BACKGROUND

¶ 3     In his amended class-action complaint, plaintiff challenged what he termed a permanent "New Road Fund Levy" (levy), which appeared on Newport Township residents' property tax bills for tax year 2014. Plaintiff asked the court to certify a class consisting of "[a]ll owners of real property in Newport Township who have been charged and paid the New Road Fund Levy ***."

¶ 4     It is undisputed that the levy was imposed on properties in the township without having been submitted for the approval of the voters at a general election. Instead, Wyckoff extended the levy[1] after the measure was approved by a majority of the residents who attended a special township meeting in September 2014 that was held for the purpose of addressing whether to impose the tax. Plaintiff alleged in his amended complaint that the manner in which the levy was approved and extended deprived the proposed class of its right to vote on the measure at a

---

[1] Taxing districts annually certify to the county clerk "the several amounts that they have levied." 35 ILCS 200/18-15(a) (West 2016). The clerk determines the rate that will produce this amount and then "extends" the levy. 35 ILCS 200/18-45 (West 2016).

general election, in violation of section 18-190(a) of the Property Tax Extension Limitation Law (PTELL) (35 ILCS 200/18-190(a) (West 2016)). Plaintiff further contended that the September 2014 township meeting was not properly noticed and that certain township officials acted inappropriately by (1) depleting the permanent road fund prior to September 2014 to "mak[e] it seem that there was a dire need for a tax to be imposed at the maximum rate allowed by law," (2) orchestrating the September 2014 meeting with knowledge that the levy would not pass at a general election, (3) packing the September 2014 meeting with their supporters and friends, (4) requiring the residents who attended the September 2014 meeting to publicly state their stances on the issue, and (5) intending to use the unlawful levy as a " 'slush fund' " to pay certain expenses that ought to be paid from a different fund.

¶ 5     Through this action, plaintiff sought "both a refund of the levied funds taken under the illegally adopted measure and an injunction requiring the Township to comply with PTELL." Plaintiff requested additional relief "for the deprivation of the substantive right of the prospective class to vote on and authorize property taxes pursuant to the Illinois Constitution, the Election Code and the Property Tax Code." Specifically, in count I, plaintiff sought a "declaratory judgment plus damages" against all defendants for the violation of PTELL. In count II, plaintiff requested an injunction against all defendants to prevent future violations of PTELL resulting from the levy. In count III, plaintiff alleged unjust enrichment against only Newport Township and the Newport Township Highway District for retaining money that was collected in connection with the levy. In count IV, plaintiff alleged that all defendants deprived the class of due process of law, in violation of section 1983 of the federal Civil Rights Act (42 U.S.C. § 1983 (2012)).

¶ 6     The township defendants moved to dismiss the amended complaint, pursuant to section

2-619.1 of the Code. That provision allows litigants to "combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses." *Board of Education of Park Forest-Chicago Heights School District No. 163 v. Houlihan*, 382 Ill. App. 3d 604, 608 (2008); see also 735 ILCS 5/2-615, 2-619 (West 2016). The township defendants offered four distinct reasons why the amended complaint, or portions thereof, were subject to dismissal pursuant to section 2-619: (1) under *Shirar v. Elbridge Township*, 249 Ill. 617 (1911), a circuit court lacks jurisdiction to hear a complaint regarding conduct at a township special meeting; (2) plaintiff's lawsuit was actually a property-tax-objection case for which the sole and exclusive remedy was provided in article 23 of the Property Tax Code; (3) the levy was not a "new rate" within the meaning of section 18-190(a) of PTELL; and (4) plaintiff's request for punitive damages and attorney fees in count IV was barred by section 2-102 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/2-102 (West 2016)).

¶ 7    The township defendants maintained that each count of the amended complaint was also subject to dismissal pursuant to section 2-615 for failing to plead sufficient facts in support of the purported causes of action. Specifically, according to the township defendants, to obtain a refund of taxes, plaintiff was required to plead that he had filed a timely tax-objection complaint pursuant to the Property Tax Code. Moreover, the township defendants contended, the amended complaint contained no facts demonstrating why the township trustees were named as defendants.[2] Furthermore, the township defendants argued, the amended complaint did not

_____

[2] In his reply brief on appeal, plaintiff agrees to dismiss the township trustees from the action, provided that the other defendants "are barred from claiming in the future that the dismissal removed necessary parties." Given that we affirm the trial court's order dismissing the

comport with the purposes of a declaratory judgment action and it was inappropriate for plaintiff to ask for a "declaratory judgment plus damages." Addressing plaintiff's request for an injunction, the township defendants asserted that plaintiff failed to allege irreparable harm or that there was no adequate remedy at law, given that he had the opportunity to challenge the levy through a tax-objection complaint. In a similar vein, the township defendants claimed that the availability of the tax-objection remedy barred plaintiff's claims for a declaratory judgment and damages pursuant to section 1983.

¶ 8 Wyckoff filed a separate motion to dismiss the amended complaint. She argued that the matter should be dismissed pursuant to both section 2-619(a)(1) and section 2-615 of the Code, as plaintiff was limited to filing a tax-objection complaint in accordance with the Property Tax Code. Alternatively, she argued, count IV, which asserted a section 1983 claim, should be dismissed for three other reasons: (1) a purported violation of state law does not afford a basis for relief, (2) plaintiff failed to avail himself of the adequate remedy provided in the tax-objection procedures set forth in the Property Tax Code, and (3) Wyckoff's conduct in extending the levy was a ministerial duty.

¶ 9 The court dismissed all counts of the amended complaint with prejudice. The court agreed with defendants that plaintiff was required to file a tax-objection complaint instead of pursuing class-wide equitable relief. Accordingly, the court dismissed the entire amended complaint pursuant to section 2-619 of the Code. Although the court recognized that its ruling on this point "was probably enough to have [the parties] on [their] way to the Appellate Court," the court nevertheless addressed certain of defendants' remaining contentions. Specifically, the

amended complaint with respect to all claims against all parties, we need not comment further on plaintiff's conditional invitation to dismiss the township trustees.

court found that count II, which sought injunctive relief, was also subject to dismissal pursuant to section 2-615 of the Code for three reasons: (1) there was no likelihood of success on the merits, (2) the statutory tax-objection procedures provided an adequate remedy at law, and (3) plaintiff failed to establish irreparable harm. Additionally, count IV's section 1983 claim was subject to dismissal pursuant to section 2-615, because there was an adequate state-law remedy available in the form of a tax-objection proceeding and Wyckoff was a ministerial officer who had no personal involvement in the alleged constitutional deprivation. The court disagreed, however, with four of the township defendants' other contentions, ruling that (1) *Shirar* did not deprive the court of jurisdiction to hear challenges based on conduct at special township meetings, (2) the levy was a "new rate" within the meaning of section 18-190(a) of PTELL, (3) attorney fees were available to a prevailing plaintiff in a section 1983 case, and (4) a declaratory judgment claim may accompany a request for other relief.

¶ 10    Plaintiff filed a timely notice of appeal.

¶ 11                                 II. ANALYSIS

¶ 12    Plaintiff argues that this case "presents a clear violation of PTELL," as the levy was not approved by voters at a general election. According to plaintiff, "a lawsuit [(such as his)] alleging a willful violation of PTELL is not truly a tax objection," because he is not challenging "the actual assessment process." Moreover, although property owners generally are barred from seeking redress outside of the statutory tax-objection procedures, plaintiff claims that his amended complaint implicated the recognized "unauthorized-by-law" exception to that rule. He further maintains that the statutory tax-objection procedures do not provide an adequate remedy at law for intentional violations of PTELL, because the tax imposed on any particular property owner might easily be less than the fee to file a tax-objection complaint, and property owners

would have to file new objections each year. He submits that limiting his relief to a tax-objection proceeding would render PTELL "a meaningless statement of policy which elected officials may ignore freely."

¶ 13     A recurring theme in plaintiff's argument is that a citizen's right to vote is a substantive right, "not some mere procedural right which can be swept away." To that end, plaintiff maintains that defendants here "deprived the entire voting electorate of Newport Township from exercising their constitutional and statutory power, right and responsibility to consent to or reject the tax." Plaintiff additionally criticizes Wyckoff for failing to take a stand against the levy, despite purportedly having the power to do so pursuant to our decision in *Hampshire Township Road District v. Cunningham*, 2016 IL App (2d) 150917.

¶ 14     In response to plaintiff's arguments, defendants reiterate many of the myriad points that they raised in their motions to dismiss.

¶ 15     A motion to dismiss pursuant to section 2-615 of the Code challenges the sufficiency of the complaint based on defects that are apparent on its face, whereas a section 2-619 motion admits the sufficiency of the complaint but asserts other matters defeating the claim. *Salvi v. Village of Lake Zurich*, 2016 IL App (2d) 150249, ¶ 25. When ruling on a motion under either section, the court accepts all well-pleaded facts as true and allows all reasonable inferences in favor of the nonmoving party. *Bianchi v. McQueen*, 2016 IL App (2d) 150646, ¶ 24. Our review is *de novo*, and we may affirm an order dismissing a complaint on any basis supported by the record. *Bianchi*, 2016 IL App (2d) 150646, ¶ 24.

¶ 16     "[T]he Property Tax Code is a comprehensive statute regulating the assessment and collection of taxes." *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 295 (2010). PTELL is a part of the Property Tax Code, and its "purpose is to provide greater citizen

control over the levy of taxes that citizens are required to pay." *Cunningham*, 2016 IL App (2d) 150917, ¶ 23. In *Cunningham*, we interpreted section 18-190(a) of PTELL as requiring a township road district to give its residents the opportunity to approve or reject a proposed new-rate permanent road-fund tax at a general election, as opposed to simply presenting the question to electors during an annual township meeting. *Cunningham*, 2016 IL App (2d) 150917, ¶ 27. Plaintiff here submits that the levy suffers from the same infirmity as the one that was at issue in *Cunningham*. *Cunningham* was procedurally unique, though, insofar as it involved a lawsuit filed by a township road district against a county clerk who refused to extend a tax. The case at bar, by contrast, presents the more typical scenario where a property owner challenges his taxes and seeks a refund.

¶ 17    Article 23 of the Property Tax Code sets forth the procedures for adjudicating property tax objections in the circuit courts. According to section 23-5,

> "if any person desires to object to all or any part of a property tax for any year, for any reason other than that the property is exempt from taxation, he or she shall pay all of the tax due within 60 days from the first penalty date of the final installment of taxes for that year." 35 ILCS 200/23-5 (West 2016).

In counties with fewer than 3 million inhabitants, such as Lake County, a property owner who pays taxes under protest in accordance with section 23-5 may file a tax-objection complaint in the circuit court "within 75 days after the first penalty date of the final installment of taxes for the year in question." 35 ILCS 200/23-10 (West 2016). A property owner must exhaust any available administrative remedies before filing a tax-objection complaint. 35 ILCS 200/23-10 (West 2016); see also 35 ILCS 200/16-55 (West 2016). The Property Tax Code allows for joinder of multiple plaintiffs in a tax-objection proceeding, but it specifies that "no complaint

shall be filed as a class action." 35 ILCS 200/23-15(a) (West 2016). The court, sitting without a jury, hears and determines "all objections specified to the taxes, assessments, or levies in question." 35 ILCS 200/23-15(b)(1) (West 2016). These procedures "shall be construed to provide a complete remedy for any claims with respect to those taxes, assessments, or levies, excepting only matters for which an exclusive remedy is provided elsewhere in this Code." 35 ILCS 200/23-15(b)(1) (West 2016). If the court orders a refund of taxes paid, the taxpayer is entitled to interest. 35 ILCS 200/23-15(c) (West 2016). Parties may appeal from final judgments in tax-objection proceedings in the same manner as in other civil cases. 35 ILCS 200/23-15(c) (West 2016).

¶ 18    Plaintiff here did not avail himself of this statutory tax-objection remedy. Instead, he filed a class-action complaint in the circuit court, seeking a declaratory judgment, equitable relief, and damages. There are two threshold questions that ultimately prove dispositive of this appeal: (1) do the statutory tax-objection procedures apply here and afford plaintiff an adequate remedy at law? and (2) if so, does the "unauthorized-by-law" exception nevertheless allow plaintiff's present action to proceed? If the answer to the first question is yes and the answer to the second question is no, then the trial court properly dismissed each of the four counts in plaintiff's amended complaint. See *La Salle National Bank v. County of Cook*, 57 Ill. 2d 318, 322 (1974) (holding that, in tax cases, where a plaintiff is prevented from seeking equitable relief, he or she likewise may not obtain declaratory relief); *In re Objection to 2005 Tax Levy*, 393 Ill. App. 3d 999, 1003 (2009) ("With regard to real estate taxation, the general rule applies that equity will not assume jurisdiction to grant relief where an adequate remedy at law exists."); *Nesby v. Country Mutual Insurance Co.*, 346 Ill. App. 3d 564, 567 (2004) ("Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at

law."); *Fromm v. Rosewell*, 771 F.2d 1089, 1092 (7th Cir. 1985) ("Principles of comity bar a taxpayer from contesting the validity of a state tax in a § 1983 damage or declaratory judgment action if there is a 'plain, adequate and complete' state remedy available." (quoting *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 107 (1981))).

¶ 19 Illinois and federal case reporters are replete with cases recognizing that Illinois's statutory tax-objection procedures generally provide aggrieved property owners an adequate remedy at law. See, *e.g.*, *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 528 (1981); *La Salle National Bank*, 57 Ill. 2d at 324; *Dumas v. Pappas*, 2014 IL App (1st) 121966, ¶ 17. Of particular note, our supreme court held that the statutory procedures provided an adequate and exclusive remedy in *People ex rel. Williams v. McDonald*, 44 Ill. 2d 349, 352-53 (1970), which, like the present case, involved a property owner's attempt to enjoin collection of a road tax. Although PTELL was enacted in the early 1990s, long after *McDonald* was decided, property owners have used the statutory procedures to challenge levies on the basis that they violated PTELL's direct-referendum requirements. See *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 31-32 (2009); *1001 Ogden Avenue Partners v. Henry*, 2017 IL App (2d) 160838, ¶ 3. In fact, a footnote in the supreme court's opinion in *Acme Markets* says that any property owners who voluntarily paid the tax at issue in that case without following the statutory procedures were precluded from obtaining a refund. *Acme Markets*, 236 Ill. 2d at 43 n.2. As defendants here observe, that footnote arguably suggests that the supreme court contemplated that property owners must raise similar PTELL challenges by way of a statutory tax-objection proceeding.

¶ 20 Despite all this authority, plaintiff submits multiple reasons why he believes the statutory tax-objection procedures do not provide the exclusive remedy here. Noting that this case "does not involve the assessment process in any respect," he suggests that he is not raising a true "tax

objection." That argument lacks merit. Simply put, article 23 of the Property Tax Code "applies when a taxpayer is seeking to challenge a tax, assessment, or levy." *Hawkins v. Far South CDC, Inc.*, 2013 IL App (1st) 121707, ¶ 20. That is exactly what plaintiff is doing in this action. Tellingly, plaintiff seeks a refund of taxes, which is the hallmark of a tax-objection action. *Cf. Hawkins*, 2013 IL App (1st) 121707, ¶¶ 18, 23 (where a plaintiff challenged the validity of an ordinance creating a special service area, but he did not request a refund of his taxes, he was not pursuing a tax objection and his relief was not limited by article 23 of the Property Tax Code). Plaintiff has also failed to direct our attention to any authority indicating that the statutory tax-objection procedures apply only when a property owner challenges the actual assessment process. To the contrary, as noted above, the plaintiffs in *Acme Markets* and *1001 Ogden Avenue Partners* used the statutory tax-objection procedures to challenge levies that allegedly violated section 18-190 of PTELL. Moreover, sections 23-5 and 23-10 of the Property Tax Code collectively establish that a property owner objecting "to all or any part of a property tax for any year, *for any reason other than that the property is exempt from taxation*," must pay his or her taxes under protest and file a timely tax-objection complaint. (Emphasis added.) 35 ILCS 200/23-5, 23-10 (West 2016). Plaintiff here does not claim that any property was exempt from taxation. Additionally, section 23-15(b)(1) states that the objection procedures "shall be construed to provide a complete remedy for any claims with respect to *** taxes, assessments, or levies, excepting only matters for which an exclusive remedy is provided elsewhere in this Code." 35 ILCS 200/23-15(b)(1) (West 2016). Plaintiff does not claim that any other portion of the Property Tax Code provides him an exclusive remedy. Under these circumstances, plaintiff is unquestionably raising a "tax objection."

¶ 21    In support of his contention that the statutory tax-objection procedures do not provide an adequate remedy, plaintiff emphasizes that individual property owners might lack financial incentive to file tax-objection complaints to challenge the levy.   Plaintiff's argument is unpersuasive.   The same dilemma seemingly would arise whenever a property owner wishes to challenge a relatively small charge on his or her property-tax bill.   Presumably aware of that dilemma, the legislature nevertheless decided to remove class actions from the Property Tax Code in 1995.  *2005 Tax Levy*, 393 Ill. App. 3d at 1002; see also 35 ILCS 200/23-15(a) (West 2016) ("[N]o complaint shall be filed as a class action.").   If the legislature had intended to create any exceptions to this categorical prohibition against class-action complaints, it could have and would have done so.   We are not empowered to "depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent."  *Cunningham*, 2016 IL App (2d) 150917, ¶ 20.  Although courts have acknowledged that there might be certain difficulties attendant to requiring "each and every taxpayer to receive notice of an unauthorized tax and to bring an individual suit to collect a refund" (*2005 Tax Levy*, 393 Ill. App. 3d at 1003), plaintiff here is raising arguments that are more properly directed to the legislature.

¶ 22    Even so, plaintiff's fear that our conclusion could render PTELL "a meaningless statement of policy which elected officials may ignore freely" is unwarranted.   Although property owners are foreclosed from pursuing class-action tax litigation, the legislature allows for joinder of multiple plaintiffs in tax-objection proceedings (35 ILCS 200/23-15(a) (West 2016)).  Any financial disincentive for property owners to individually challenge taxes such as Newport Township's levy is ameliorated to some extent by this joinder provision, as property owners may still band together to challenge an improper levy.  Additionally, if a property owner

files a tax-objection complaint and identifies an error, section 18-145 of the Property Tax Code (35 ILCS 200/18-145 (West 2016)) empowers the county clerk to correct that error as to all other affected property owners, via an abatement. *Givot v. Orr*, 321 Ill. App. 3d 78, 89 (2001).

¶ 23    For these reasons, we hold that the statutory tax-objection procedures apply here and that they provide plaintiff a complete and adequate remedy in connection with his challenge to the levy.

¶ 24    Nevertheless, plaintiff attempts to invoke one of the recognized exceptions to the general rule restricting his remedies.  Specifically, even if the statutory tax-objection procedures provide an adequate remedy at law in a particular case, a property owner may "seek injunctive or declaratory relief in circuit court where the tax or assessment is unauthorized by law." *Millennium Park Joint Venture*, 241 Ill. 2d at 296, 301.  This exception applies where "the taxing body has no statutory power to tax" or where the assessor "acts with respect to property over which he has not been given any jurisdiction by statute."  *Millennium Park Joint Venture*, 241 Ill. 2d at 295.  The exception does not apply, however, where a plaintiff's complaint "merely alleges procedural errors or irregularities in the taxing process."  *Millennium Park Joint Venture*, 241 Ill. 2d at 307.  In such a case, the tax would be "incorrect or illegal" as opposed to "unauthorized by law" (*Millennium Park Joint Venture*, 241 Ill. 2d at 307), and it would need to be challenged in a statutory tax-objection proceeding.

¶ 25    Plaintiff asserts that a township meeting is merely "a valid first step toward imposing a permanent road tax" and that the township must additionally "adopt an ordinance or resolution putting the question to the voters at the next general election."  Even if plaintiff is right on this point (the township defendants claim that the levy was not a "new rate" so as to implicate PTELL's direct-referendum requirements), the levy was not "unauthorized by law."  There was a

statutory basis for the levy. See 605 ILCS 5/6-601(a) (West 2016) (specifying the procedures for road districts to impose "an annual tax not to exceed .167% of the value of the taxable property *** for the purpose of constructing or maintaining gravel, rock, macadam or other hard roads"). The levy was thus authorized by law, even if it was incorrect or illegal in the sense that there were procedural errors or irregularities in the taxing process. See *McDonald*, 44 Ill. 2d at 352-53 (holding that a special road levy was "authorized to the extent that equity will not intervene to enjoin its collection," even if the levy was assessed in "an irregular or erroneous manner"). This is not a case involving the "rare circumstances" (*R.D. Werner Co. v. Leyden Fire Protection District*, 91 Ill. App. 3d 587, 593 (1980)) where a taxing body lacks *any* statutory taxing authority with respect to a challenged levy. *Cf. Millennium Park Joint Venture*, 241 Ill. 2d at 298 (the "unauthorized-by-law" exception applied where a taxpayer alleged that the taxing body had no statutory authority, under any circumstances, to tax its license interest); *People ex rel. Vaughan v. Thompson*, 377 Ill. 244, 246, 250-51 (1941) (bonds issued in 1939 were "unauthorized by law" where there was a "complete want of authority" under the applicable statute to issue them after January 1, 1938).

¶ 26    Plaintiff insists that the right to vote is a substantive right, not a mere procedural formality. Be that as it may, this has nothing to do with whether the levy was "unauthorized by law" for purposes of the particular narrow exception that plaintiff invokes. Even if the manner in which the levy was imposed deprived township residents of a substantive right (*i.e.*, the right to vote at a general election as opposed to at a township meeting), plaintiff is still complaining of "procedural errors or irregularities in the taxing process," not a complete lack of statutory authority to assess this particular tax. *Millennium Park Joint Venture*, 241 Ill. 2d at 307. To the extent that plaintiff wishes to assert any violation of his voting rights, it is well established that

property owners may use the statutory tax-objection procedures to "raise constitutional questions arising from alleged improper assessments." *La Salle National Bank*, 57 Ill. 2d at 324; see also *Fromm*, 771 F.2d at 1090 ("The plaintiff may raise constitutional challenges to the assessment in his objection.").

¶ 27    Finally, even if the "unauthorized-by-law" exception applied, plaintiff has submitted no authority supporting his request to proceed with a class action.  Nor has he cited any authority justifying his prayer for damages.  Where a tax is "unauthorized by law," a taxpayer is entitled to "seek injunctive or declaratory relief in [the] circuit court," despite the fact that the statutory tax-objection procedures offer an adequate alternative remedy. *Millennium Park Joint Venture*, 241 Ill. 2d at 296.  Without developing a cogent legal argument on this particular point, plaintiff seems to assume that if the "unauthorized-by-law" exception were to apply, in addition to seeking injunctive and/or declaratory relief in the circuit court, he would be entitled to pursue a federal civil rights action for damages.  Plaintiff overlooks that a taxpayer may not contest the validity of a state tax in an action for damages pursuant to section 1983 if, as in the present case, state law offers an adequate and complete remedy. *Fromm*, 771 F.2d at 1092.  To the extent that plaintiff argues that alleged intentional violations of PTELL warrant damages beyond what is presently provided for in the tax-objection statutes, that is a matter for the legislature, not this court.

¶ 28    Accordingly, the trial court properly dismissed the amended complaint pursuant to section 2-619 of the Code, as the statutory tax-objection procedures provide plaintiff an exclusive and adequate remedy at law and no exception applies so as to allow his current claims to proceed.  In light of our holdings, we need not address the numerous other reasons why defendants believe we may affirm the trial court's judgment.

¶ 29                        III. CONCLUSION

¶ 30    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 31    Affirmed.