2020 IL App (2d) 191012
No. 2-19-1012
Opinion filed December 9, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JOHN P. SANFILIPPO & SONS, INC.; SEC RANDALL & MILLER, LLC; MARQUETTE EJP ALGONQUIN, LLC; MENARD, INC.; and JOHN FUHLER, | ) ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 18-TX-121 |
| DAVID RICKERT, in His Official Capacity as Kane County Treasurer and *ex officio* Kane County Collector, | ) ) ) ) | |
| Defendant-Appellee | ) ) | |
| (Community Unit School District No. 300, Intervenor-Appellee). | ) ) ) | Honorable Kevin T. Busch, Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court, with opinion.
Justices Hutchinson and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiffs, John P. Sanfilippo & Sons, Inc.; SEC Randall & Miller, LLC; Marquette EJP Algonquin, LLC; Menard, Inc.; and John Fuhler (Objectors), brought this tax objection proceeding pursuant to section 23-10 of the Property Tax Code (see 35 ILCS 200/23-5 *et seq.* (West 2016)) to obtain a refund of certain taxes they paid to defendant, David Rickert, as the Kane County Treasurer and *ex officio* Kane County Collector (Collector). The taxes at issue had been levied by

intervenor, Community Unit School District No. 300 (District), pursuant to section 17-2.2a of the School Code (105 ILCS 5/17-2.2a (West 2016)), for special education purposes. The Objectors complained that the District was not authorized to levy the amount imposed for special education without first seeking referendum approval pursuant to section 17-2.2a of the School Code (*id.*) and section 18-190(a) of the Property Tax Extension Limitation Law (PTELL) (35 ILCS 200/18-190(a) (West 2016)). On cross-motions for summary judgment, the trial court granted the District's and the Collector's motion and denied the Objectors' motion. The Objectors appeal. We affirm.

¶ 2                                                    I. BACKGROUND

¶ 3      For the tax year 2017, the District voted to impose a special education tax levy of $30 million under section 17-2.2a of the School Code. This levy was not submitted to the voters of the District for approval. In that the $30 million levy represented an initial calculated tax rate of 0.913842% when factoring in the equalized assessed value of all the District's property, the Kane County Clerk reduced the levy to reflect the permissible maximum rate of 0.80%. The District had a population of less than 500,000 inhabitants and maintained grades kindergarten through 12. Since 2005, A special education levy had been imposed by the District every year. At the time of the levy at issue, the District was subject to section 17-2.2a of the School Code (105 ILCS 5/17-2.2a (West 2016)) and the PTELL (35 ILCS 200/18-190(a) (West 2016)).

¶ 4      The Objectors filed a 13-count tax rate objection alleging various taxing violations against various taxing entities. Only count XII is at issue on appeal.[1] Count XII alleged that the District

_____

[1] We refer to the count as "count XII" because, though it is labelled count XI in the Objectors' complaint, it follows count XI and is followed by count XIII, and the labelling is presumably a typographical error.

was required to submit the levy to the voters for approval under section 17-2.2a(c) of the School Code (105 ILCS 5/17-2.2a(c) (West 2016)), because the statutory limitation was 0.04% and the District exceeded that rate without seeking referendum approval as mandated by both the School Code and the PTELL. The Objectors filed a partial motion for summary judgment arguing that (1) the District improperly exceeded the statutory limitation (0.04%) for a Special Education fund by failing to submit it for referendum approval as required by section 17-2.2a(c) of the School Code and the PTELL and, (2) in the alternative, because it was a new tax rate as understood in the PTELL and had to otherwise be submitted for referendum approval. The District and the Collector each filed a cross-motion for summary judgment, countering that (1) the PTELL exempted the District's levy from the referendum requirements of section 17-2.2a(c) so long as it did not exceed 0.80% and (2) an increased rate was not a new rate for purposes of the PTELL referendum requirement. After a hearing, the trial court, on July 16, 2019, denied the Objectors' motion for partial summary judgment and granted the District's and the Collector's cross-motions for summary judgment as to count XII. Following the denial of the Objectors' motion to reconsider, the trial court found, pursuant to Illinois Supreme Court Rule 304(a) (eff. March 8, 2016), that there was no just reason for delaying either enforcement or appeal of the judgment. The Objectors timely appeal.

¶ 5                                    II. ANALYSIS

¶ 6      On appeal, this court must determine whether the levy at issue was subject to section 17-2.2a(c)'s referendum requirement because it exceeded 0.04% or, alternatively, the PTELL's referendum requirement for new tax rates. The facts are not in dispute, and where, as here, the parties filed cross-motions for summary judgment, they agree that only a question of law is involved. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. "Where a case is decided through summary

judgment, our review is *de novo*." *Id.* ¶ 30. Likewise, in that this is purely a question of law and statutory construction, our review is *de novo. NDC LLC v. Topinka*, 374 Ill. App. 3d 341, 358 (2007).

¶ 7     The Objectors challenge the legality of the special education levy issued by the District, asserting that "there is no doubt" that section 17-2.2a of the School Code calls for a maximum levy rate of 0.04% unless the District passes a referendum by its electors, in which case the rate could be raised up to 0.80%.[2] They dispute that the PTELL dispensed with section 17-2.2a(c)'s referendum requirement and further argue that a referendum is otherwise required under the PTELL because the increased rate is a new rate under the PTELL requiring a referendum. The Collector and the District respond that this argument completely ignores the plain language added to section 18-190(a) of the PTELL in 2006 that explicitly supersedes the referendum requirement in the School Code and allows the District to levy for special education up to the 0.80% statutory ceiling without seeking referendum approval. See Pub. Act 94-976, § 5 (eff. June 30, 2006) (amending 35 ILCS 18-190(a)). The Collector and the District further argue that the PTELL referendum requirement does not otherwise apply to the District because a rate increase is not a new rate for purposes of the PTELL.

¶ 8     The parties agree that at the time of the levy the District was subject to section 17-2.2a of the School Code, as it had a population of less than 500,000 inhabitants. They further agree that the District was subject to the PTELL. See 35 ILCS 200/18-185 (West 2016) (defining an "Affected county" to include one that is contiguous to a county of 3 million or more inhabitants).

---

[2] Portions of the Objectors' appellate briefs transpose the maximum levy rate numeral at 0.40% instead of 0.04% and the voter-approved levy rate at 0.08% instead of 0.80%.

¶ 9     We begin then by setting forth the relevant statutes. Section 17-2.2a of the School Code provides, in pertinent part:

> "(a) The school board of any district having a population of less than 500,000 inhabitants may, by proper resolution, levy an annual tax upon the value as equalized or assessed by the Department of Revenue, for special education purposes, including the purposes authorized by Section 10-22.31b as follows:
>
> * * *
>
> (3) districts maintaining only grades kindergarten through 12, and prior to July 1, 1970, districts maintaining only grades 1 through 12, .04%.
>
> * * *
>
> (c) The tax rate limits specified in this Section may be increased to *** .80% by districts maintaining grades kindergarten through 12, upon the approval of a proposition to effect such increase by a majority of the electors voting on such proposition at a regular scheduled election. The proposition may be initiated by resolution of the school board and shall be certified by the secretary to the proper election authorities for submission in accordance with the general election law. If at such election a majority of the votes cast on the proposition is in favor thereof, the school board may thereafter until such authority is revoked in like manner levy annually the tax so authorized." 105 ILCS 5/17-2.2a(a)(3), (c) (West 2016).

¶ 10    Section 18-190(a) of the PTELL provides, in pertinent part:

> "If a *new rate* is authorized by statute to be imposed without referendum *** the governing body of the affected taxing district before levying the new rate shall submit the new rate to direct referendum under the provisions of this Section ***.

*\*\*\* Notwithstanding the provisions, requirements, or limitations of any other law,* any tax levied for the 2005 levy year and all subsequent levy years by any taxing district subject to this Law *may be extended at a rate exceeding the rate established for that tax by referendum or statute, provided that the rate does not exceed the statutory ceiling above which the tax is not authorized to be further increased either by referendum or in any other manner.*" (Emphases added.) 35 ILCS 200/18-190(a) (West 2016).

¶ 11    In construing statutes, our primary function is to give effect to the legislature's intent. *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008). The best indicator of the legislature's intent is the plain and ordinary meaning of the statute's language. *Id.* When a statute is clear and unambiguous, a court must give effect to the plain and ordinary meaning of the language without resort to other tools of statutory construction. *Id.*

¶ 12    Clearly, section 17-2.2a(a) of the School Code limits the District to the maximum rate for the special education fund of 0.04%, unless, pursuant to section 17-2.2a(c), the District seeks referendum approval for a rate not to exceed 0.80%. 105 ILCS 5/17-2.2a(a), (c) (West 2016). Thus, standing alone, section 17-2.2a(c) would require the District to seek referendum approval before exceeding a 0.04% levy; however, section 17-2.2a(c) must be interpreted in light of section 18-190(a) of the PTELL.

¶ 13    For, while section 17-2.2a(a) of the School Code unambiguously requires a referendum for special education levies exceeding 0.04%, section 18-190(a) of the PTELL unambiguously relieves the District of this obligation where it provides,

"[n]otwithstanding the provisions, requirements, or limitations of any other law, any tax levied for the 2005 levy year and all subsequent levy years by any taxing

district subject to this Law may be extended at a rate exceeding the rate established for that tax by referendum or statute, provided that the rate does not exceed the statutory ceiling above which the tax is not authorized." 35 ILCS 200/18-190(a) (West 2006).

As we observed in *Hampshire Township Road District v. Cunningham*, 2016 IL App (2d) 150917, ¶ 27, the "[n]otwithstanding the provisions, requirements, or limitations of any other law" provision was intended to override the referendum provision of any taxing district subject to the PTELL. Simply put, a plain reading of the PTELL demonstrates that, notwithstanding section 17-2.2a(c)'s referendum requirement, an existing levy rate may be extended at a higher rate without referendum so long as it does not exceed the statutory ceiling, *i.e.*, 0.80%. Thus, the District was statutorily entitled to increase its special education fund levy, without referendum approval, up to the statutory ceiling of 0.80%.

¶ 14 To escape the plain language of the PTELL, the Objectors first rely on our opinion in *Hampshire Township*. In *Hampshire Township*, we considered the applicability of the PTELL's referendum requirement to a road district levy for a new rate that had been subjected not to a referendum of the general public but rather to a referendum of the electors present at the annual township meeting, as permitted by section 6-601(a) of the Highway Code (605 ILCS 5/6-601(a) (West 2014)). *Hampshire Township*, 2016 IL App (2d) 150917, ¶ 17. We disagreed with the Road District's argument that, because there had been a referendum as contemplated by section 6-101(a) of the Highway Code, the PTELL did not apply. *Id.* ¶ 27. Rather, we concluded that, where a referendum for a new rate was required under the PTELL, it had to comply with the PTELL's referendum strictures, which did not contemplate a referendum consisting only of the annual township meeting's electors. *Id.* ¶¶ 25, 27.

¶ 15    Side-stepping the facts and rationale of our holding in *Hampshire Township*, the Objectors focus on the opinion's language that they contend supports their position that, because section 17-2.2a(a) of the School Code requires a referendum approval for levies in excess of 0.04%, the PTELL does not excuse the same. Specifically, in support, the Objectors quote in their opening brief the following language from *Hampshire Township* (*id.* ¶ 24):

> " 'Thus, we must first determine whether the [tax] constitutes a new rate authorized by statute to be imposed without referendum. We conclude that, although the [tax] is a new rate, it is not one that is statutorily authorized to be imposed without referendum. *Rather, the Highway Code requires a referendum.*' " (Emphasis in the Objectors' opening brief).

We disagree with the Objectors' conclusion that this language "should be the end of our analysis." The PTELL requires a referendum where a new tax is levied for the first time. While the Highway Code, like the School Code, required a referendum, the question in *Hampshire Road* was whether the referendum that took place for the new tax rate was sufficient under the PTELL. *Hampshire Road* is inapplicable to the instant case because the District did not levy a new tax rate for purposes of the PTELL.

¶ 16    The Objectors next direct us to *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29 (2009), which they suggest interprets the PTELL as requiring a referendum for rate increases. In essence, the Objectors submit that *Acme Markets* holds that a rate increase is the equivalent of a new tax for purposes of the PTELL's referendum requirement. Initially, we note that the issue in *Acme Markets* was not the propriety of the taxing district's rate increase without a referendum. Rather, the issue was whether the rate increase was a new tax that required a referendum under the PTELL because the originally imposed levy had never been subjected to a referendum, in violation of the PTELL. Quite apart from this distinction, we further note that the PTELL has been substantially

amended since the version interpreted in *Acme Markets* and that this amendment buttresses our conclusion that the PTELL's referendum requirement for "new taxes" or a "new tax rate" does not apply to rate increases.

¶ 17    Prior to the passage of Public Act 94-976, effective June 30, 2006, section 18-190(a) of the PTELL provided,

> "[i]f a new rate *or a rate increase* is authorized by statute to be imposed without referendum *** the governing body of the affected taxing district before levying the new rate *or rate increase* shall submit the new rate *or rate increase* to direct referendum under the provisions of *** the Election Code." (Emphases added.) 35 ILCS 200/18-190(a) (West 2004).

Public Act 94-976 substantially amended the PTELL. First, it removed all three references to "rate increases" as it related to the referendum requirement, mandating referendums, moving forward, only for new rates. Further, it added language providing that, "[n]otwithstanding *** any other law, any tax levied *** *may be extended at a rate exceeding the rate established for that tax by referendum or statute, provided that the rate does not exceed the statutory ceiling above which the tax is not authorized.*" (Emphasis added.) 35 ILCS 200/18-190(a) (West 2006). Thus, the legislature made clear its intention to exempt rate increases to existing levies from (1) the PTELL's own referendum requirement for new rates where an authorizing statute does not require a referendum and (2) any laws, such as section 17-2.2a(c) of the School Code, requiring referendums where the increase is below the statutory ceiling for rate increases.

¶ 18    Moreover, to the extent that any ambiguity exists in the statute as to whether a new rate encompasses a rate increase such that a rate increase is subject to the PTELL's referendum requirement, established principles of statutory interpretation provide that we afford substantial

weight and deference to the interpretation given to the law by the administrative agency charged with its enforcement. *Reed v. Kusper*, 154 Ill. 2d 77, 86 (1992). Our conclusion that the PTELL does not require referendums for individual rate increases is consistent with the guidance given by the Illinois Department of Revenue (IDOR) in its technical manual, which sets forth that, "[b]eginning with the 2006 levy year, a fund for a taxing district may exceed a voter-approved rate as long as it does not exceed a statutorily prescribed maximum rate ceiling (that cannot be exceeded by referendum or otherwise)." Ill. Dep't of Revenue, *Property Tax Extension Limitation Law, A Technical Manual* 17 (2013), https://www2.illinois.gov/rev/research/publications/Documents/localgovernment/ptax1080.pdf [https://perma.cc/F6Q2-R4WQ] (hereinafter *Technical Manual*). Nor is this inconsistent with our understanding that the PTELL's purpose is to provide greater citizen control over the levy of taxes they are required to pay. See *Acme Markets*, 236 Ill. 2d at 42; *Hampshire Township*, 2016 Il App. (2d) 150917, ¶ 23. This is because the PTELL's 2006 amendment's effect on taxing districts was to establish one limiting tax rate calculation for each district, not a limiting rate for each fund. *Technical Manual*, *supra*, at 16-17. Even where a fund for a taxing district exceeds the voter-approved rate, the sum of all rates for the district may still not exceed the limiting rate. *Technical Manual*, *supra*, at 17 ("The sum of all rates (*i.e.*, the aggregate preliminary tax rate) still cannot exceed the limiting rate. In other words, to make up the difference in 'Fund A', adjustments may need to be made to other funds to offset the increase in Fund A.").

¶ 19    Before concluding, we must address the District's motion for sanctions, which we have taken with the case. The District argues that this appeal is frivolous and warrants monetary sanctions pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994), which allows us to impose an appropriate sanction upon a party or a party's attorney if an appeal is frivolous or not

taken in good faith. An appeal will be deemed frivolous if a reasonable, prudent attorney would not in good faith have brought such an appeal. *Hursey v. Calhoun*, 2020 IL App (5th) 190276, ¶ 77 (citing *Dreisilker Electric Motors, Inc. v. Rainbow Electric Co.*, 203 Ill. App. 3d 304, 312 (1990)). Imposition of sanctions under Rule 375(b) is left strictly to our discretion. *Fields v. Lake Hillcrest Corporation*, 335 Ill. App. 3d 457, 466 (2002).

¶ 20    In arguing for the imposition of sanctions, the District maintains that the Objectors have simply ignored the plain language of the PTELL, as well as its interpretation by the IDOR. The District reminds us that we have twice before been asked and declined to impose sanctions against the instant Objectors' attorney for purportedly frivolous tax litigation. See *Mandigo v. Stolman*, 2019 IL App (2d) 180466, ¶¶ 22-23; *WKS Crystal Lake, LLC v. LeFew*, 2015 IL App (2d) 150544, ¶ 22. While we agree that the Objectors arguably discounted language within the PTELL that permits the District to increase the existing special education tax rate beyond 0.04% without referendum, we decline to impose sanctions under Rule 375(b), as the case does raise issues of first impression.

¶ 21                             III. CONCLUSION

¶ 22    For the foregoing reasons, we affirm the judgment of the circuit court of Kane County granting summary judgment on count XII in favor of the District and the Collector.

¶ 23    Affirmed.

---

**No. 2-19-1012**

---

| | |
|---|---|
| **Cite as:** | *John P. Sanfilippo & Sons, Inc. v. Rickert*, 2020 IL App (2d) 191012 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 18-TX-121; the Hon. Kevin T. Busch, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Timothy P. Dwyer, of Chicago, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Joseph H. McMahon, State's Attorney, of Geneva (Joseph F. Lulves, Assistant State's Attorney, of counsel), for appellee.<br><br>Donald E. Renner III, Scott E. Nemanich, and Derek A. Farrugia, of Klein, Thorpe & Jenkins, Ltd., of Chicago, for intervenor-appellee. |

---